UNITED STATES of America,
Plaintiff–Appellee,

v.

Guadalupe A. CASTILLO a/k/a Alfonso Castillo–Salas and Martin Manzanares–Sanchez, Defendants–Appellants.

Nos. 97–2889, 97–3144.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1998.

Decided June 25, 1998.

Deirdre A. Durborow (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, Michael C. Carr, Office of the United States Attorney, Benton, IL, for Plaintiff–Appellee.

Patrick W. Fitzgerald (argued), Alton, IL, for Defendant–Appellant Castillo.

John Dale Stobbs, II (argued), East Alton, IL, for Defendant–Appellant Manzanares–Sanchez.

Before POSNER, Chief Judge, and RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A jury convicted Guadalupe A. Castillo and Martin Manzanares–Sanchez of conspiracy to possess marijuana with intent to distribute, and the district court sentenced each of them to fifty-one months incarceration, a fine, and three years of supervised release. Castillo and Manzanares question whether the government presented sufficient evidence for the jury to convict them and whether the court erred in refusing to reduce their sentences for their minor roles. Castillo also challenges the district court's denial of his mistrial motion for prosecutorial misconduct. For the reasons given below, we affirm their convictions and sentences.

## I. HISTORY

This drug conspiracy involves the repacking and transporting of marijuana from Matamoros, Mexico to various points throughout the United States for later distribution and sale. The ring leader was David Zacarias, and the other participants in this conspiracy were Castillo, Jose Guadalupe Gonzales, Manzanares, and Jose Resendez.

In August 1996, Zacarias recruited Resendez to help in his drug enterprise. Zacarias brought marijuana from Mexico to Brownsville, Texas. In Brownsville, at an unoccupied house owned by a relative of Zacarias, Zacarias and Resendez divided the marijuana into smaller packages, rewrapping the smaller packages with plastic wrap. Together they made repeated trips from Brownsville, Texas to Florida to deliver various amounts of marijuana.

In September 1996, Zacarias acquired 230 pounds of marijuana. On October 1, Zacarias and Resendez divided and rewrapped it with the assistance of Castillo and Gonzales. The project took approximately eight hours and was conducted in the same house in Brownsville. Castillo and Resendez rewrapped half of the marijuana together in the bedroom while Zacarias and Gonzales worked on the other half in the living room. The work was plainly visible to Manzanares, a step-father of Zacarias, who passed through the house several times during the eight hours.

After the rewrapping was complete, Zacarias told Resendez that Zacarias and Castillo were going to Michigan to sell half of the marijuana. The other half of the marijuana was loaded in the cab and bed of Manzanares' pickup truck. The marijuana in the bed was in a suitcase; the marijuana in the cab was in multiple garbage bags in the backseat of the extended cab. Resendez, Manzanares, and Manzanares' wife then left Brownsville for Houston in his truck. In

Houston, they stayed at Manzanares' sister's home.

On October 2, 1996, Zacarias, Gonzales, and Castillo arrived at Manzanares' sister's home with the other half of the marijuana in a gray Cougar automobile which Zacarias owned but Castillo drove. Zacarias informed Resendez, Castillo, Gonzales, and Manzanares that the plan had changed and that they were all traveling to Michigan to sell all 230 pounds of marijuana. They then departed for Dallas in the two vehicles. On their arrival in Dallas, Zacarias obtained hotel accommodations and meals for everyone. While in Dallas, Zacarias worried that the police might pull the Cougar over because it had a broken taillight. Zacarias left with the Cougar and returned with a van. Someone drove the Cougar back to the hotel where Castillo, Resendez, and Zacarias transported approximately 115 pounds of marijuana from the Cougar to the van.

From Dallas, the crew departed for Michigan. Manzanares and Castillo traveled in Manzanares' pickup while the other members of the conspiracy traveled in the van. On October 4, 1996, police stopped both vehicles on Interstate 57 near Mt. Vernon, Illinois. A police dog sniffed the two vehicles, alerting the authorities that marijuana may be inside. The police questioned passengers of both vehicles. Manzanares twice denied and then admitted that marijuana was in the pickup. He also admitted that his pickup was traveling with the van. The police seized a total of 119 pounds of marijuana from the pickup and 117 pounds from the van. One package had a palm print which was later identified as Castillo's, and another had his fingerprint on it. Zacarias admitted that he was the leader of the conspiracy.

On October 9, 1996, the grand jury for the Southern District of Illinois returned a two count indictment. Count one charged Castillo, Manzanares, Zacarias, and Gonzales with conspiracy to possess marijuana with intent to distribute. Count two charged Manzanares, Zacarias, and Gonzales with possession of marijuana with intent to distribute and Castillo with aiding and abetting them in that offense. A jury trial began on March 31, 1997. After a seven day trial, the jury found all of the defendants guilty of the first count; it also convicted Zacarias of the second count, but acquitted Manzanares, Castillo, and Gonzales of that count. On July 22, 1997, the district court sentenced Castillo to fifty-one months incarceration, a fine of one thousand dollars, and three years of supervised release. On August 15, 1997 the court sentenced Manzanares to fifty-one months incarceration, a fine of five hundred dollars, and three years of supervised release.

## II. Analysis

Castillo and Manzanares raise three issues on appeal. First, they challenge whether the government presented sufficient evidence for the jury to convict them of conspiracy. Second, Castillo claims the district court abused its discretion in refusing to grant his motion for mistrial because of prosecutorial misconduct. Third, they assert that the district court erred in refusing to award them a reduction in their sentence levels for their minor roles in the drug conspiracy.

### A. Sufficiency of the Evidence

Manzanares and Castillo present two arguments on this issue. First, they contend that the government did not produce sufficient evidence to show that Castillo or Manzanares joined the conspiracy. Second, they highlight that the jury found Manzanares not guilty of possessing marijuana with intent to distribute and Castillo not guilty of aiding and abetting Manzanares, Gonzales, and Zacarias as proof of the paucity of evidence against them. As they interpret the verdict, the only way for the jury to acquit them of these charges was by accepting their claims at trial that they did not know about the marijuana. Thus, according to Manzanares and Castillo, if the government did not establish that they knew about the marijuana and did not present evidence of an agreement between them and the other conspiracy members, then there was insufficient evidence for the jury to find them guilty of conspiracy to possess marijuana with intent to distribute.

A conspiracy is a combination of two or more people formed for the purpose

of committing a criminal act through their joint efforts. *See United States v. Larkins,* 83 F.3d 162, 165 (7th Cir.1996); *United States v. Rodriguez,* 53 F.3d 1439, 1444 (7th Cir.1995). To prove that Castillo and Manzanares were members of the charged conspiracy, the government had to produce evidence that the conspiracy existed and that they knowingly agreed to join it. *See United States v. Richardson,* 130 F.3d 765, 772 (7th Cir.1997), *cert. denied sub nom. Westmoreland v. United States,* — U.S. —, 118 S.Ct. 1324, 140 L.Ed.2d 486 (1998); *United States v. Santos,* 20 F.3d 280, 283 (7th Cir. 1994). It may establish these elements through circumstantial evidence and any reasonable inferences drawn therefrom involving the defendants' relationship, overt acts, and overall conduct. *See United States v. Navarrete,* 125 F.3d 559, 562 (7th Cir.1997). One means by which the government can prove that a defendant joined the conspiracy is by combining the acts or presence of the defendants with " 'other evidence indicating that the presence or act was intended to advance the ends of the conspiracy.' " *Id.* (quoting *United States v. Johnson–Dix,* 54 F.3d 1295, 1302 (7th Cir.1995)). Because a jury convicted Castillo and Manzanares, we view the evidence and the reasonable inferences drawn therefrom in the light most favorable to the prosecution and reverse only if no rational trier of fact could have found them guilty beyond a reasonable doubt. *See United States v. Laurenzana,* 113 F.3d 689, 692 (7th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 240, 139 L.Ed.2d 170 (1997).

■ The jury had ample evidence to conclude that Manzanares joined the conspiracy. The other members of the conspiracy repackaged the marijuana in front of Manzanares. Almost 115 pounds of marijuana were placed in his pickup, which he drove to Houston. While in Houston, the conspiracy members stayed at the home of Manzanares' sister. From Houston, Manzanares traveled to Dallas and Illinois with the marijuana in his pickup. Finally, under police questioning, Manzanares admitted that he was carrying marijuana in his pickup, that he was traveling with the other vehicle, that he knew the marijuana weighed over 100 pounds, and that they were traveling to Grand Rapids, Michi-

gan with the drugs. By showing that Manzanares provided transportation and lodging services for the group while knowing he was transporting over 100 pounds of drugs, the government provided the jury with sufficient evidence to conclude beyond a reasonable doubt that Manzanares joined the conspiracy.

■ Similarly, the government presented more than sufficient evidence from which the jury could conclude that Castillo also joined the conspiracy. In Brownsville, Castillo worked with Resendez for eight hours to divide and repackage approximately 115 pounds of marijuana. He drove Zacarias' Cougar loaded with that amount of marijuana to Houston. In Houston, he helped to transfer the marijuana from the Cougar to the van. Castillo then drove Manzanares' pickup to Dallas and then to Illinois. Looking at Castillo's acts and his interactions with the members of the conspiracy, it is apparent that the government presented sufficient evidence for the jury to convict him.

■ Finally, we reject Castillo's and Manzanares' contention that their acquittals on other charges are proof of the insufficiency of the evidence for their conspiracy conviction because the evidence supporting the charges was identical. Both the Supreme Court and this Court have rejected their position. In *United States v. Powell,* the Supreme Court stated that each count in an indictment is to be treated as a separate indictment and that an acquittal on one count does not dictate an acquittal on any other count. 469 U.S. 57, 62–63, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citing *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932)); *see also United States v. Nobles,* 69 F.3d 172, 189 (7th Cir.1995); *United States v. Lakich,* 23 F.3d 1203, 1211 (7th Cir.1994). There are several reasons for this approach. When a jury returns inconsistent verdicts, it may do so for reasons other than a determination of innocence, such as "mistake, compromise, or lenity." *Powell,* 469 U.S. at 65, 105 S.Ct. 471. Also, the government must bear the consequences of a jury's acquittal because it cannot appeal the acquittal. *See id.; United States v. Brown,* 934 F.2d 886, 889 (7th Cir.1991). Finally,

"an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Powell*, 469 U.S. at 66, 105 S.Ct. 471. For these reasons, we have refused to afford defendants who face inconsistent verdicts the benefit of a nullification of the guilty verdicts. *See Nobles*, 69 F.3d at 189; *Brown*, 934 F.2d at 889. Whatever its reason for acquittal on the other charges, we refuse to question the wisdom of the jury's verdict in this manner.

### B. *Prosecutorial Misconduct*

 Castillo asserts that the Assistant United States Attorney ("AUSA") improperly commented on Castillo's failure to introduce evidence. Castillo believes that this comment misled the jury to believe that he was hiding evidence. The district court denied his request for a mistrial or for a cautionary instruction. We review that decision for an abuse of discretion. *See United States v. Brooks*, 125 F.3d 484, 499 (7th Cir.1997); *United States v. Kizeart*, 102 F.3d 320, 326 (7th Cir.1996).

During its case in chief, the government called Melissa Murbarger of the Illinois State Police Forensic Sciences Command as a fingerprint expert. The focus of her testimony was her comparison between a finger/palm print card of Castillo's and latent fingerprints she had lifted from packages containing marijuana. On direct examination, Murbarger testified that she compared the card to the negatives of photographs she had taken of the latent fingerprints. It was her standard practice to use the negatives for comparison. Murbarger did not have the negatives with her when she testified. Murbarger concluded that the latent prints were Castillo's.

On cross examination, Castillo's counsel complained to the court that the government did not provide him with the negative Murbarger used. In the presence of the jury, the court asked both sides whether Castillo's counsel had a copy of the photograph, not whether Castillo's counsel had the negative. Both the prosecutor and Castillo's counsel stated that defense counsel had a copy of the photograph. The court asked a second time.

Again, the prosecutor said that he did, but Castillo's counsel responded, "I think so. I guess so. I don't know." Trial Tr. at 394, *United States v. Castillo*, No. 96 CR 40081 (S.D. Ill. April 2, 1997).

At that point, the court excused the jury. Castillo's counsel orally moved for a mistrial or for a limiting instruction, reasoning that the prosecutor's statements suggested that he had the negative when he did not. According to Castillo's counsel, these statements improperly shifted the burden of production to Castillo to produce the negative and impermissibly commented on Castillo's failure to produce it. The district court denied the requests, stressing that Castillo's counsel had a copy of the photograph for some time and that if there had been any improper behavior, it was on his part. Castillo then returned to the prosecutor copies of the photographs which the government provided during discovery.

 In reviewing allegations of improper comments by a prosecutor, we employ a two-step process. We first look at the comments in isolation to determine if they were improper. *See United States v. Morgan*, 113 F.3d 85, 89 (7th Cir.1997); *United States v. Butler*, 71 F.3d 243, 254 (7th Cir.1995); *United States v. Badger*, 983 F.2d 1443, 1450 (7th Cir.1993). If we find the comments are proper, the analysis ends. If we find they are improper, we must then examine the comments in light of the record as a whole to determine whether the comments deprived the defendant of a fair trial. *See Morgan*, 113 F.3d at 89; *Butler*, 71 F.3d at 254.

 We do not see how the AUSA's statements were improper. In response to a direct question of the court, the prosecutor stated that Castillo's counsel had a copy of the photograph in question. The AUSA did not say that Castillo must produce this photograph or that Castillo's counsel was hiding that photograph from the jury. We doubt that this exchange had any impact on the jury, but any impact it had was the result of Castillo's counsel's poor judgment. He exclaimed that the sky was falling because he did not have the negative when in fact he always had a copy of the photograph in his

possession. We refuse to fault the AUSA for responding truthfully to a direct question of the court. Thus, the district court did not abuse its discretion in denying Castillo's motions for mistrial and limiting instructions.

## C. Role in the Offense

Finally, Castillo and Manzanares allege that the district court erred in refusing to reduce their sentence levels under U.S.S.G. § 3B1.2 for their limited roles in the Zacarias drug conspiracy. They contend that the sentencing court erred because they were the least culpable members of the conspiracy.

Section § 3B1.2 instructs a court to decrease the offense level of a defendant by four levels if he was a minimal participant in a criminal activity and decrease it by two levels if he was a minor participant. See U.S.S.G. § 3B.1.2(a), (b). A "minimal participant" is someone who is "plainly among the least culpable of those involved in the conduct of a group," U.S.S.G. § 3B1.2, comment. (n.1), whereas "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal," U.S.S.G. § 3B1.2, comment. (n.3).

 When a defendant requests a decrease in his offense level, he has the burden of demonstrating his eligibility for the reduction by a preponderance of the evidence. See United States v. Beltran, 109 F.3d 365, 370 (7th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997). Whether a defendant merits a sentence reduction for his role in the offense is heavily dependent on the particular facts of the case. See U.S.S.G. § 3B1.2, comment. (backg'd). We therefore review the district court's conclusion in this area for clear error. See United States v. Lewis, 79 F.3d 688, 690 (7th Cir.1996).

 Contrary to Castillo and Manzanares' claims, the district court did not err in denying their sentence reduction requests. Section 3B1.2 applies to participants who are less culpable than most other participants.[1] In this five person conspiracy, three members, Castillo, Gonzales, and Manzanares, had approximately the same level of involvement. The district court concluded that they were average members of this conspiracy. The fact that other members like Zacarias were more involved does not ensure Castillo and Manzanares of a reduction for a minor role; rather, increased participation may merit an upward departure for managing the conspiracy. See U.S.S.G. § 3B1.1(b) (establishing a three-level enhancement for managers of criminal activity involving five or more participants). Castillo and Manzanares performed similar roles; they provided transportation services and something else. Other than driving the vehicles, Castillo rewrapped the marijuana in Brownsville, and Manzanares provided a place to sleep in Houston. Each person was an essential component in this drug conspiracy. See United States v. McClinton, 135 F.3d 1178, 1190 (7th Cir.1998); United States v. Navarez, 954 F.2d 1375, 1382 (7th Cir.1992). Thus, it was not clear error for the district court to refuse to reduce their offense levels for their roles in the conspiracy.

For the above reasons, we AFFIRM the judgment of conviction and the sentence imposed by the district court.

---

**1.** In this appeal, Manzanares' counsel adopted many of the arguments Castillo's counsel made, including whether Manzanares and Castillo had only minor roles in the conspiracy. We wish to stress that counsel should be very careful to determine whether co-defendants have adverse interests before adopting arguments. In determining who had a minor role, co-defendants are generally at odds over who was the new person pulled in at the last minute and who was a vital participant from day one. Manzanares' counsel avoided this problem by elaborating on Manzanares' role in the conspiracy in an attempt to distance Manzanares' participation from all of the other conspiracy members including Castillo.