In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3323

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTIAN MENDOZA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 764—**David H. Coar**, *Judge.*

ARGUED APRIL 19, 2006—DECIDED AUGUST 10, 2006

Before COFFEY, EASTERBROOK, and MANION, *Circuit Judges.*

COFFEY, *Circuit Judge.* On July 18, 2005, Christian Mendoza was sentenced to 108 months' imprisonment for conspiring to possess with the intent to distribute 95 kilograms of cocaine, 21 U.S.C. § 841(a)(1). On appeal, he argues that he was entitled to a reduction in his sentence, asserting that he was only a minor participant in a drug conspiracy, *see* U.S.S.G. § 2D1.1(a)(3), § 3B1.2(b). He also contends that he should have received a non-guidelines sentence based on the disparity between his sentence and that of his fellow coconspirator, Santos Fernandez Quinonez, *see* 18 U.S.C. § 3553(a). Affirmed.

## I. Background

Mendoza and his codefendants—Welsi Luna-Salvador, Canuto Payan, and Quinonez—were involved in a scheme to transport a shipment of cocaine across the country from San Bernadino, California to a buyer in Chicago, Illinois known as "Alfaro." According to Mendoza, Luna was hired by the seller, known as "Rox," and was responsible for the transport of the cocaine from California to Illinois. Luna, in turn, contracted the job of transporting the drugs to Quinonez, a truck driver. After doing so, Luna received a phone call from Rox, informing him of the location of the white truck containing the shipment of cocaine. Luna located the truck and drove it to the predetermined meeting place in San Bernadino, California, where he turned it over to Quinonez and Payan, who were assigned to assist Quinonez in transferring the drugs to Illinois.[1]

Upon receiving the cocaine from Luna, Quinonez and Payan set out to transport the shipment in a semi-tractor trailer. Just outside of St. Louis, the truck was pulled over by Illinois State Troopers during a routine traffic stop.[2] Thereafter, Quinonez and Payan consented to a search of the vehicle and the cocaine was discovered, resulting in the two men being placed under arrest and taken into custody. During the course of questioning, Quinonez and Payan admitted their involvement in the conveyance of the drugs and agreed to cooperate with the investigation and participate in a controlled delivery of the cocaine

---

[1] After arriving in Chicago, Quinonez and Payan were to hand over the drugs over to Luna, who was to make arrangements for the final delivery to Alfaro.

[2] The traffic stop was initiated based on suspected violations of commercial motor vehicle regulations. Specifically, the officer observed that the vehicle's headlamps were not functioning and various electrical wires were unsecured.

to Luna. While under surveillance by law enforcement officials, Quinonez and Payan met Luna at a gas station near Interstate 80, just outside of Chicago. It was at this point that the two men handed the drugs over to Luna, who, upon receipt, was arrested, taken into custody and questioned.

Like Quinonez and Payan, Luna admitted his involvement in the drug scheme and agreed to cooperate. Pursuant to his agreement with the officers, Luna made contact with Alfaro, the purchaser of the drugs, and arranged for the delivery of the shipment to Mendoza at a restaurant in Bolingbrook, Illinois. Upon arrival at the restaurant, Luna gave Mendoza the keys to a Lincoln Navigator containing the cocaine. Thereafter, Mendoza drove the drug-loaded vehicle to an apartment in Bensenville, Illinois, where, as directed (by Alfaro), he left the vehicle in the designated parking lot. Unfortunately for Mendoza, the police were monitoring the entire transaction, and Mendoza was placed under arrest as he exited the vehicle and promptly taken into custody.

Mendoza was subsequently charged with, and plead guilty to, conspiring to possess with the intent to distribute 95 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). Pursuant to the plea agreement, each of the parties referred to heretofore reserved the right to argue the length of the sentence imposed.[3] At sentencing, Mendoza requested that the trial judge reduce his offense level two points, arguing that he was only a minor participant in the conspiracy. *See* U.S.S.G § 3B1.2(b). He asserted that he was entitled to such a reduction because his participation in the drug conspiracy was only that of a courier and that he transported the drugs

---

[3]  Mendoza also retained his right to appeal.

a much shorter distance than his codefendant.[4] The district court disagreed and denied his request, finding that the actual distance Mendoza physically transported the cocaine was irrelevant. Rather, the district judge reasoned that Mendoza's prior contacts with the mastermind, Alfaro (including his direct hiring by Alfaro) along with the fact that he was entrusted with the task of delivering the drugs directly to Alfaro, certainly evinced a close relationship between the two and thus supported the judge's conclusion that Mendoza was not a minor participant. Indeed, the court specifically noted that Mendoza had more than a passing relationship with Alfaro, while Quinonez and Payan were mere "intermediary couriers." Mendoza was sentenced to 108 months' imprisonment to be followed by five years' supervised release.[5]

Mendoza filed a motion on July 22, 2005 for reconsideration of his sentence in light of the disparity between his and Quinonez's sentences. The district judge denied Mendoza's motion, confirming his earlier finding that Mendoza and Quinonez were not similarly situated based on Mendoza's close, personal relationship with Alfaro. Mendoza appealed and we affirm.

---

[4] While the exact distance that Mendoza transported the drugs is not explicitly referenced in the defendant's briefs, from the record it is clear that he transported the drugs from Bolingbrook, IL to Bensenville, IL, a distance of approximately twenty-five miles. *See Mapquest.com*, http://www.mapquest.com (last visited July 10, 2006).

[5] On July 20, 2005, during Quinonez's sentencing, the district judge granted offense level reductions under § 3B1.2(b) and § 3E1.1, finding that Quinonez was a minor participant in the conspiracy and furthermore that he had substantially assisted the government in its investigation. Quinonez's sentence was 60 months imprisonment.

## II. Discussion

### A. Minor Participant Reduction Under § 3B1.2(b)

On appeal Mendoza argues that he was not an integral part of the drug conspiracy, but only a courier, and as such, was entitled to a minor participant reduction under U.S.S.G, § 3B1.2(b). In support of his argument, Mendoza contends that "he could have been replaced by anyone old enough to drive [a car]." He avers that this is confirmed by the short distance he was directed to transport the drugs, approximately twenty-five miles, as opposed to his codefendants who drove the drugs across the country from California to Illinois, a distance of almost 2,000 miles.

"The district court's determination concerning the defendant's [participation] in the offense is a finding of fact, subject to a clearly erroneous standard of review on appeal." *United States v. Hankton*, 432 F.3d 779, 793 (7th Cir. 2005) (internal quotation marks and citation omitted). When seeking a minor participant classification it is the defendant's burden to demonstrate by a preponderance of the evidence that he was "substantially less culpable" than the other participants. *See* U.S.S.G. § 3B1.2(b), comment. (n.3(A)); *United States v. Corral*, 324 F.3d 866, 874 (7th Cir. 2003). "Clear error exists only, after reviewing the evidence, we are left with a definite and firm conviction that a mistake has been committed," *United States v. Arocho*, 305 F.3d 627, 641 (7th Cir. 2002), and we will rarely reverse a district court's denial of a petitioner's request for a minor participant reduction. *See United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959 (7th Cir. 2004) (*citing Corral*, 324 F.3d at 874; *Arocho*, 305 F.3d at 641; *United States v. Castillo*, 148 F.3d 770, 776 (7th Cir. 1998); *cf. United States v. Hunte*, 196 F.3d 687, 694-95 (7th Cir. 1999)).

We have previously discussed the unique and essential role couriers play in drug conspiracies:

*couriers are an indispensable part of drug dealing networks. Without somebody to take the drugs across the border, the drugs will never reach their illicit market. . . . [E]ven if the defendant were purely a courier having no knowledge of the other aspects of the drug-dealing operation, the defendant might nonetheless be a highly culpable participant in the operation.* A courier who willingly *undertakes illegal transit without asking many questions is especially valuable to a criminal organization. When police apprehend*[ ] *a studiously ignorant courier, the organization can rest comfortably, knowing that its other operations remain hidden from the law.*

*United States v. Osborne*, 931 F.2d 1139, 1158 (7th Cir. 1991) (emphasis in original) (quoting *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990)). *See also United States v. Nobles*, 69 F.3d 172, 184 (7th Cir. 1995) (concluding that couriers are "crucial to the success of a drug trafficking operation."). *"The mere fact that a defendant is a courier in a drug-smuggling operation does not entitle that defendant to be classified as a minimal participant." See Osborne*, 931 F.2d at 1158 (quoting *United States v. Calderon-Porras*, 911 F.2d 421, 423-24 (10th Cir. 1990)) (internal quotations omitted).

In his brief, Mendoza acknowledges our precedent; but in spite of this, he argues that since he transported the drugs a far shorter distance than his codefendants he was only a minor participant in the conspiracy. We disagree.

The distance each member of a drug conspiracy transports the drugs is not *per se* indicative of his level of involvement in the conspiracy. *See United States v. Johnson*, 248 F.3d 655, 666 (7th Cir. 2001) (stating that "determining one's role in the offense is a fact-based inquiry"); *see also United States v. Garcia*, 920 F.2d 153, 155 (2d Cir. 1990) (noting that "the culpability of a defendant courier

must depend necessarily on [several] factors"). Instead, an examination of each codefendant's total role in the criminal offense provides a much more thorough insight into their responsibility as well as position in the conspiracy and, indeed, is required under the guidelines. *See* § 3B1.2. One of the factors that sentencing judges should examine while assessing a defendant's role in a criminal enterprise is the defendant's relationship with the enterprise's principal members. *See United States v. Shonubi,* 988 F.2d 84, 90 (2d Cir. 1993) (stating that "[a] sentencing court's assessment of the defendant's role in criminal activity is highly fact-specific and depends on [among other things] the nature of the defendant's relationship to other participants"); *see also United States v. Stephenson*, 53 F.3d 836, 850 (7th Cir. 1995) (discussing the defendant's "intimate knowledge of [the conspiracy's] inner workings" when reviewing the district court's denial of a mitigating role reduction), *and id.* (noting that the defendant was "aware of the magnitude as well as the other participants in the conspiracy" when assessing his role in the conspiracy).

In denying Mendoza's request for a minor participant reduction under § 3B1.2(b), the district judge found that Mendoza's prior personal relationship with Alfaro, the buyer, was most relevant. If Alfaro did not have the utmost trust and confidence in Mendoza's ability to protect his (Alfaro's) identity and avoid detection by authorities, he would not have entrusted Mendoza with the responsibility for the final delivery of the drugs. Thus, Mendoza's duty was not *simply* to transport the cocaine. He was also trusted with the important job of insulating Alfaro from the authorities and protecting Alfaro's identity from both law enforcement and other members of the conspiracy that might implicate him (Alfaro). Consequently, it is no surprise that when examining Mendoza's role in the conspiracy, the sentencing judge found Mendoza's relationship with Alfaro to be of great relevance. *See Tolson*, 988 F.2d at 1504

(noting that federal judges, "whether they are in the trial or appellate system, do not operate in a vacuum, shielded from knowledge of drug operations in the real world[,]" and thus take into consideration and rely on their vast knowledge of organized criminal activity when imposing sentence).

Because Mendoza has failed to establish that he played a minor role in the conspiracy, it was not error for the judge to deny him a reduction under § 3B1.2(b).

## B. REASONABLENESS OF MENDOZA'S SENTENCE

Mendoza next challenges the reasonableness of his sentence, under *Booker*, arguing that he should have received a non-guidelines sentence due the unwarranted sentence disparity between himself and his codefendant, Quinonez. *See United States v. Booker*, 125 S.Ct. 738 (2005); 18 U.S.C. § 3553(a). Essentially Mendoza argues that because he and Quinonez were similarly situated in the drug conspiracy, his sentence should have been no greater than that of Quinonez. We disagree.

Mendoza's sentence was within a properly calculated guideline range, and is thus entitled to a presumption of reasonableness. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). "[Mendoza] can rebut this presumption only by demonstrating that his . . . sentence is unreasonable when measured against the factors set forth in § 3553(a)." *Id.* He has failed to do so.

While 18 U.S.C. § 3553(a) mandates that courts are to avoid unwarranted sentence disparity among similarly situated defendants. Disparity in sentences among defendants for the violation of the same statute is only warranted when the facts of a surrounding a crime[6] demonstrate to the

---

[6] Including their prior criminal records and/or their respective degrees of cooperation with the government.

sentencing judge that one defendant should receive a greater or lesser sentence based on the circumstances of that particular case. *See United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006), *petition for cert. filed*, (U.S. Apr. 27, 2006) (No. 05-1379); *United States v. Newsom*, 428 F.3d 685, 689 (7th Cir. 2005), *cert. denied*, 126 S.Ct. 1455 (2006). Despite Mendoza's assertion to the contrary, the judge found and clearly explained that Mendoza and Quinonez were not similarly situated. We agree.

As stated at length above, the district judge found that Mendoza had a closer relationship with Alfaro, the purchaser and thus a principal member of the conspiracy, than did Quinonez. In making that determination, the judge specifically mentioned Mendoza's prior personal contacts and dealings with Alfaro and that Mendoza was entrusted with making the final delivery of the drugs to Alfaro. On the other hand, there was no evidence that Quinonez ever had any contact or prior dealings with Alfaro or the conspiracy's other principal member, Rox. Moreover, the record also reflects that Mendoza's degree of cooperation with the government was less than that of Quinonez, who the government advocated was entitled to a reduction based on his substantial assistance.

The disparity between Mendoza's and Quinonez's sentences, based on the record before us, is both warranted and reasonable.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*