In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 07-2276 and 07-2353

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

AGUSTIN PANAIGUA-VERDUGO AND JOSE CHAVEZ,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 06 CR 219—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED FEBRUARY 11, 2008—DECIDED AUGUST 8, 2008

———————


Before BAUER, KANNE and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* On November 29, 2006, the grand jury returned an indictment charging Agustin Panaigua-Verdugo and Jose Chavez with seven counts of distributing fifty or more grams of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Each count involved a separate drug transaction carried out by Panaigua-Verdugo and Chavez, or Chavez on his own, over a six month period in 2006. On February 23, 2007, Panaigua-Verdugo and Chavez pleaded guilty to one of the counts of the indict-

ment. After a sentencing hearing, the district court sentenced Panaigua-Verdugo to seventy months' imprisonment and Chavez to 108 months' imprisonment. On appeal, Panaigua-Verdugo challenges the district court's refusal to apply a minor participant adjustment to his sentencing calculation; Chavez challenges the district court's decision to include drug amounts beyond his conviction in calculating his sentence; and both defendants challenge the reasonableness of their sentences. For the following reasons, we affirm.

### A.  Panaigua-Verdugo: Minor Role Reduction

Panaigua-Verdugo argues that the district court erred when it declined to grant him a downward adjustment for playing a minor role in the offense. According to Panaigua-Verdugo, Chavez arranged the majority of the drug deals in question with an undercover agent without Panaigua-Verdugo's input, and, though Panaigua-Verdugo delivered the drugs on the majority of the occasions, his role was substantively inferior during the course of the conspiracy.

Under U.S.S.G. § 3B1.2(b), a defendant's offense level can be decreased by two levels if he was a minor participant in any criminal activity. We review the district court's interpretation and application of the Sentencing Guidelines *de novo*. *United States v. Chamness*, 435 F.3d 724, 726 (7th Cir. 2006). We review the district court's decision to deny a defendant an adjustment for a minor role in an offense for clear error. *United States v. Miller*,

405 F.3d 551, 557 (7th Cir. 2005).[1] Clear error exists when, after reviewing the evidence, we are "left with a definite and firm conviction that a mistake has been committed." *United States v. Olivas-Ramirez*, 487 F.3d 512, 516 (7th Cir. 2007). We rarely reverse a district court's decision on this issue, given that the district court is in the best position to evaluate a particular defendant's role in a criminal scheme. *United States v. Sorich*, 523 F.3d 702, 717 (7th Cir. 2008); *United States v. Mendoza*, 457 F.3d 726, 729 (7th Cir. 2006).

The commentary to § 3B1.2 defines a "minor participant" as a defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant" and "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. nn. 3(A) & 5. Panaigua-Verdugo has the burden of showing he is entitled to the adjustment by a preponderance of the evidence. *United States v. Sandoval-Vasquez*, 435 F.3d 739, 745 (7th Cir. 2006) (citing *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 960 (7th Cir. 2004)).

Panaigua-Verdugo argues that he should receive the minor participant adjustment because he: (1) lacked full knowledge of the drug operation; (2) received little compensation for his efforts (approximately $100 for the

---

[1] The government argues that Panaigua-Verdugo did not properly preserve this specific argument, and therefore our review should be for plain error. *See United States v. Blaylock*, 413 F.3d 616, 619 (7th Cir. 2005). However, Panaigua-Verdugo properly preserved the issue by objecting to the recommendation against the minor role adjustment, so our review will be for clear error.

deals); (3) was manipulated by Chavez; (4) did little to forward the drug conspiracy; and (5) acted only as a "firewall," or a buffer, between Chavez and the purchaser. The government, on the other hand, argues that Panaigua-Verdugo did not bring forth enough evidence to establish that he was entitled to the minor participant adjustment.

Panaigua-Verdugo delivered 523.47 grams of methamphetamine during four of the seven drug transactions arranged by Chavez over a six-month period, which amounts to almost ninety percent of the drugs involved in the deals. He played an integral role in the scheme by linking the seller to the buyer. Panaigua-Verdugo received the drugs from Chavez and followed his instructions on how to deliver the drugs. By directly coordinating with Chavez in dealing the drugs to the undercover agent, Panaigua-Verdugo acted as an "essential component" in the conspiracy, and the fact that Chavez was arguably more involved does not entitle a defendant to a reduction in the offense level. *See United States v. McKee*, 389 F.3d 697, 700 (7th Cir. 2004) (citing *United States v. Castillo*, 148 F.3d 770, 776 (7th Cir. 1998)).

The fact that Panaigua-Verdugo did not reap substantial pecuniary gains does not automatically render his level of participation minor. *See United States v. Brick*, 905 F.2d 1092, 1095 (7th Cir. 1990). Panaigua-Verdugo's suggestion that he was just a "firewall" does not take into account the extent of his role. A more proper characterization would be one of a courier, and we have held that a courier may play an important role in any drug distribution scheme, and therefore is not automatically entitled to a mitigating role reduction. *See United States v. Hamzat*, 217 F.3d 494, 498 (7th Cir. 2000).

We conclude that the district court did not clearly err in denying Panaigua-Verdugo a reduction under § 3B1.2(b), with one reservation. During the sentencing hearing, the district court noted that "I am sentencing you only for the drug deliveries you made, not for being part of the larger conspiracy. So I don't see that it is really appropriate to give you a minimal participant reduction." This was an error. A defendant may receive a reduction under § 3B1.2 even if he is held accountable only for his own conduct. *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 960 (7th Cir. 2004) (citing U.S.S.G. § 3B1.2, comment. (n.3(A))). However, any error in this regard is harmless, because the evidence presented by Panaigua-Verdugo falls far short of showing that he was entitled to the adjustment. Panaigua-Verdugo delivered the vast majority of drugs charged in the case, acting in concert with Chavez in a repeated set of transactions. We uphold the district court's primary conclusion that Panaigua-Verdugo played an integral part in the transactions and therefore did not deserve a minor participant reduction, noting the deference afforded district courts on this issue. *See Sorich*, 523 F.3d at 717; *Mendoza*, 457 F.3d at 729.

## B.  Chavez: Calculation of Drug Quantity

Chavez appeals from the district court's calculation of the quantity of drugs involved in the offense, arguing that the district court did not explicitly support its finding that the drug amounts in the six other dismissed counts should be included as "part of the same course of conduct" for sentencing purposes. Because Chavez forfeited this issue by failing to raise it below, we review for plain error. *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005). Under that standard, the defendant has the burden

of proving an error that is obvious and that affects substantial rights. *Id*.

Under § 1B1.3(a)(2) of the Sentencing Guidelines, all acts and omissions that were "part of the same course of conduct or common scheme or plan as the offense of conviction" should be considered "relevant conduct" for sentencing purposes. Relevant conduct is factored into the Guidelines sentencing calculations as if the defendant had been convicted of that conduct. *United States v. White*, 519 F.3d 342, 347 (7th Cir. 2008).

When the district court aggregates drug quantities from unconvicted relevant conduct for purposes of calculating a defendant's base offense level, we require that the court "explicitly state and support, either at the sentencing hearing or (preferably) in a written statement of reasons, its finding that the unconvicted activities bore the necessary relation to the convicted offense." *United States v. Arroyo*, 406 F.3d 881, 889 (7th Cir. 2005) (citing *United States v. Bacallao*, 149 F.3d 717, 720 (7th Cir. 1998)). That said, if it is clear that the district court took into consideration and adopted the facts contained in the presentence report ("PSR"), as well as the government's reasoning concerning those facts, we have upheld the court's decision to include the unconvicted activities as relevant conduct, even without express findings. *Id.* (citing *Bacallao*, 149 F.3d at 720).

Because uncharged drug quantities can add months or years to a defendant's advisory guidelines range, we require that the evidence relied upon by the district court at sentencing must bear "sufficient indicia of reliability." *United States v. Wilson*, 502 F.3d 718, 721-22 (7th Cir. 2007) (citing *United States v. Acosta*, 85 F.3d 275, 282 (7th Cir. 1996)). In Chavez's case, there must be reliable

evidence to support the district court's conclusion that the unconvicted transactions were "part of the same course of conduct or common scheme or plan" as the convicted transactions. Two or more offenses are part of a common scheme or plan if they are connected by at least one common factor, such as "common victims, common accomplices, common purpose, or similar *modus operandi*." *Bacallao*, 149 F.3d at 719 (quoting U.S.S.G. § 1B1.3(a)(2), cmt. n. 9). However, "section 1B1.3(a)(2) must not be read to encompass any offense that is similar in kind to the offense of conviction but that does not bear the required relationship to that offense." *Id.* at 719-20. In assessing whether there is a strong relationship between the unconvicted conduct and the convicted offense, courts should consider whether the government has demonstrated a significant similarity, regularity, and temporal proximity. *Id*. at 719.

Chavez relies heavily on *Bacallao* in arguing that the court erred by not explicitly stating its finding that the unconvicted activity bore the necessary relation to the convicted offense. In *Bacallao*, the district court sentenced the defendant based on a quantity of 3.3 kilograms of cocaine without making an independent finding that the additional quantity of drugs was "relevant conduct" and instead relying entirely on the information contained in the PSR. We held that, under those particular circumstances, the PSR itself must explain how the additional quantities were part of the same course of conduct or common scheme or plan as the offense of conviction. Finding that the PSR lacked any dates, common accomplices, or detail concerning how the cocaine was acquired or distributed, we vacated and remanded for resentencing. *Bacallao*, 149 F.3d at 720-22.

As in *Bacallao*, the district court made no explicit findings
linking the additional unconvicted drug transactions to
the offense of conviction and relied entirely on the PSR. At
the sentencing hearing, the court stated: "The probation
office prepared the advisory guidelines correctly using
the current guideline manual. The calculations take into
account all acts and omissions that were part of the
same course of conduct or common scheme or plan as
the offense of conviction." In the written statement of
reasons, the district court specifically stated that it
adopted the PSR without change. It further noted that the
probation office properly prepared the PSR using the
Guidelines, and that "in accordance with § 1B1.3(a)(1) and
(2)," the acts that were part of the same conduct were
taken into account in the Guidelines calculation. Finally,
the court stated: "The base offense level is 32 pursuant to
§ 2D1.1(c)(4), because the offense, including relevant
conduct, involved at least 596.17 grams of methamphet-
amine."

Unlike *Bacallao*, the PSR here contains specific informa-
tion about the participants, dates, amounts, and prices of
the charged drug transactions. According to the PSR, on
seven separate occasions over a seven-month period,
Chavez arranged a drug transaction which was carried out
by either Chavez or Panaigua-Verdugo. One of the two
defendants delivered the following amounts of metham-
phetamine to an undercover agent: 14.07 grams on
April 19, 2006; 27.44 grams on April 25, 2006; 27.33 grams
on May 12, 2006; 27.69 grams on August 24, 2006; 84.36
grams on September 15, 2006; 165.68 grams on
September 26, 2006; and 246.10 grams on November 14,
2006. The undercover agent arranged the amount and
method of payment directly with Chavez. All of this

information was provided by the undercover agent and the Wisconsin crime laboratory which analyzed the drugs and determined the weight of each purchase. Statements by Panaigua-Verdugo corroborated the information. Chavez had the opportunity to review the PSR and failed to object to its contents.

This evidence was sufficient to support the district court's finding. The PSR establishes that Chavez worked with a common accomplice over a short period of time for the same purpose—the sale of increasingly larger quantities of methamphetamine. The transactions were repetitious in method and motive. The information contained within the PSR was sufficiently reliable and contained extensive information supported by witness testimony. Chavez gives no reason for discrediting the information contained within the PSR, and did not contradict the evidence before the district court. Accordingly, the district court did not err in finding that the other drug transactions were "relevant conduct" for sentencing purposes.

### C.  Consideration to § 3553(a) Sentencing Factors

Finally, Panaigua-Verdugo and Chavez both argue that the district court failed to give meaningful consideration to the § 3553(a) factors or adequately state its reasons for imposing each defendants' sentence.

We review sentences for reasonableness, using an abuse of discretion standard. *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). A sentence that falls within a properly calculated advisory guidelines range is presumed reasonable. *United States v. Omole*, 523 F.3d 691, 696 (7th Cir. 2008) (citing *Rita v. United States*, ___ U.S. ___,

127 S.Ct. 2456, 2462-63, 168 L.Ed.2d 203 (2007)). A sentence is reasonable if the district court gives meaningful consideration to the factors enumerated in § 3553(a) and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case. *Shannon*, 518 F.3d at 496 (citing *Gall v. United States*, 552 U.S. ___, 128 S.Ct. 586, 596-97, 169 L.Ed.2d 445 (2007)).

We address Chavez's argument first, as Panaigua-Verdugo adopts the argument in his brief. In reviewing Chavez's sentence, we consider whether the judge committed any procedural errors, such as failing to analyze the § 3553(a) factors or failing to adequately explain the chosen sentence. *United States v. Gordon*, 513 F.3d 659, 666 (7th Cir. 2008) (citing *Gall*, 128 S.Ct. at 597). The district court need not address each § 3553(a) factor in checklist fashion, explicitly articulating its conclusion for each factor; rather, the court must simply give an adequate statement of reasons, consistent with § 3553(a), for believing the sentence it selects is appropriate. *Shannon*, 519 F.3d at 496.

In sentencing Chavez at the bottom of the 108-135 month advisory guideline range, the district court sufficiently analyzed the § 3553(a) factors and explained the reasons for Chavez's sentence, including a consideration of the seriousness of the offense. *See* § 3553(a)(1) and (2)(A). While the district court did not address each § 3553(a) factor, it was not required to do so. Chavez argues that the court did not address his pleas for leniency, including the negative effects that deportation would have on his family. On the contrary, the district court directly addressed this issue, noting:

> The sentence will be punishment, but the deportation will be even greater punishment given the number of

> family members that you have in the United States.
> I wish you'd thought of that before you got involved
> in this criminal activity. Unfortunately you didn't,
> you did get involved and there is a punishment that
> follows.

The district court engaged with Chavez's concerns regarding the effects that the sentence and subsequent deportation would have on his family. We find that the district court's statement of reasons was adequate, and in light of these considerations, the court's decision to impose a sentence at the low end of the advisory guidelines range was reasonable in light of § 3553(a).

We are reluctant to address Panaigua-Verdugo's argument regarding the reasonableness of his sentence, considering that he cribs Chavez's argument wholesale without specifically examining how the argument applies to his own sentencing hearing. Regardless, we find nothing in the record to suggest that the district court failed to consider the § 3553(a) factors in imposing Panaigua-Verdugo's sentence, and Panaigua-Verdugo presents nothing to disturb the rebuttable presumption of reasonableness of his within-guidelines sentence. *See Shannon*, 518 F.3d at 496.

Accordingly, we AFFIRM the sentences of Panaigua-Verdugo and Chavez.