NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 29, 2014
Decided July 9, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 13-3175

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:12-cr-00062 |
| ROSALINA VELAZQUEZ, *Defendant-Appellant.* | Barbara B. Crabb, *Judge.* |

### O R D E R

Rosalina Velazquez pleaded guilty to conspiracy to possess with the intent to distribute cocaine, 21 U.S.C. §§ 846, 841(a), and the district court imposed a 108-month sentence. On appeal Velazquez argues that she should have received a 2-level reduction for her minor role in the offense. *See* U.S.S.G. § 3B1.2(b). Because the court did not clearly err in refusing this reduction, we affirm the judgment.

Rosalina Velazquez and several coconspirators trafficked drugs in Rock County, Wisconsin, and Winnebago County, Illinois. Velazquez primarily assisted in maintaining the accounting of drug debts. Her husband, Emeterio Velazquez, played a central role in the conspiracy by coordinating the delivery of drugs and money, and her son, Omar Velazquez, brokered deals and collected drug debts. She once attended a meeting with Emeterio, Omar, and a confidential informant who owed them drug money, during which Velazquez provided the drug ledger.[1] Velazquez also twice collected thousands of dollars from that informant to pay off his debt. Additionally, Velazquez had been identified in 11 wiretapped conversations advising Emeterio on whom to sell drugs to, how to collect drug debts, and what cars to use for deliveries, and warning him not to keep drugs or money in their home.

Velazquez objected to the presentence report, arguing that her minor role in the conspiracy warranted a 2-level downward adjustment, *see* U.S.S.G. § 3B1.2(b), because her activities were limited to bookkeeping, she had no decision-making authority, and she did not negotiate drug sales or supply or deliver drugs. She added that "her involvement in this scheme is directly due to her marital relationship." At sentencing, her attorney acknowledged that Velazquez had discussed the conspiracy's activities with Emeterio, advised him on drug debts, and provided a ledger to him during a meeting with a drug debtor, but argued that Velazquez deserved a mitigating-role adjustment because she "served basically as a confidant to her husband."

The district court declined to apply the reduction, concluding that Velazquez was an average participant in the conspiracy. The court found that Velazquez's participation in the conspiracy was "necessary to perpetuate the drug trafficking activities and arguably essential to the conspiracy's successful operation," and that her "maintenance of accurate drug ledgers was integral to the scheme's profitability." The court also concluded that Velazquez had no grounds to deny having decision-making authority or having arranged or negotiated any drug transactions. The court then imposed a sentence of 108 months' imprisonment, at the bottom of the guidelines range.

On appeal Velazquez challenges the district court's refusal to apply § 3B1.2(b), maintaining that she deserved an adjustment for her limited role in the conspiracy. She does not meaningfully confront the court's conclusion that her accounting of drug debts was integral to the conspiracy's success; instead, she points to other factors which, in

---

[1] The parties discuss a drug ledger maintained by Velazquez but never elaborate on what that document entailed other than that it kept track of drug debts.

her view, establish that she was not an indispensable member of the conspiracy. She urges, for example, that she did not negotiate, sell, or deliver drugs, have one-on-one contact with customers or suppliers, recruit members for the conspiracy, or have decision-making authority.

The sentencing guidelines call for a 2-level decrease in an offense level if a defendant played a minor role in the criminal activity. U.S.S.G. § 3B1.2(b). The reduction is appropriate only if the defendant demonstrates by a preponderance of the evidence that she is substantially less culpable than the average participant. *Id.* § 3B1.2 cmt. n.3(A) & 5; *United States v. Sandoval-Velazco*, 736 F.3d 1104, 1107 (7th Cir. 2013). We review for clear error the district court's decision to deny a minor-role reduction. *United States v. Panaigua-Verdugo*, 537 F.3d 722, 724 (7th Cir. 2008).

The district court here did not clearly err in denying the reduction. The court concluded that Velazquez was integral to the conspiracy's success because she maintained the drug ledger, and a defendant who engages in "key activities to the success of the enterprise" is not a minor participant. *United States v. Lopez*, 545 F.3d 515, 517 (7th Cir. 2008); *see United States v. Cain*, 155 F.3d 840, 844 (7th Cir. 1998) (defendant who did not handle drugs or money but provided "necessary services" to the conspiracy by renting an apartment and car to store and deliver drugs was not minor participant); *United States v. Castillo*, 148 F.3d 770, 776 (7th Cir. 1998) (defendant who provided transportation and shelter was "essential component" to drug conspiracy). And though Velazquez maintains that she deserves the reduction because she did not sell, supply, or deliver drugs, and she lacked decision-making authority, those alleged limitations are supported solely by her attorney's unsworn assertions, which are not evidence, *see United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008), and so we agree with the district court that Velazquez had no ground to assert that her role was so limited.

Nevertheless, Velazquez contends that her marriage to Emeterio propelled her into the conspiracy and, for that reason, the district court should have applied the minor-role reduction. She recognizes that we have affirmed the denial of a minor-role reduction to defendants who maintained close, trust-filled relationships with the conspiracy's leader, *see United States v. Garcia*, 580 F.3d 528 (7th Cir. 2009); *United States v. Mendoza*, 457 F.3d 726 (7th Cir. 2006), but distinguishes herself from the defendants in those cases by asserting that she is being punished solely for being married to a drug trafficker. She relies on a comment made in *United States v. Greer*, 375 F. Supp. 2d 790, 794 (E.D. Wis. 2005), in which the district court said that "non-violent women with little or no prior criminal history are increasingly captured in the ever widening net cast by

the war on drugs . . . . In too many cases, women are being punished for the act of remaining with a boyfriend or husband engaged in drug activity."

But the record does not support Velazquez's contention that she was "drawn into crime due to her relationship with her husband." To the extent that Velazquez relies on *Greer*, the comments in that case related not to the application of U.S.S.G. § 3B1.2(b) but instead to the application of the sentencing factors under 18 U.S.C. § 3553(a). *See Greer*, 375 F. Supp. 2d. at 792, 794–95. In any event, the record does not support Velazquez's argument that "Emeterio directed her activities and ultimately is responsible for her involvement." According to the undisputed facts developed in the presentence report and at the plea hearing, Velazquez jumped into the conspiracy by advising Emeterio on how to collect drug debts, whom to sell drugs to, and what car to deliver drugs in, warning him not to store drugs or money in their house, discussing drug prices with him, collecting money from drug debtors, and maintaining the drug ledger. *See United States v. Bautista*, 532 F.3d 667, 674–75 (7th Cir. 2008) ("predominantly silent" courier who constantly was at ringleader's side not minor participant); *Mendoza*, 457 F.3d at 730 (7th Cir. 2006) (courier who enjoyed "utmost trust and confidence" of conspiracy mastermind not minor participant).

Lastly, Velazquez for the first time on appeal briefly compares her role in the conspiracy to coconspirators other than her husband, including Omar Emeterio and Ruperto Ruiz, who both brokered deals, and Jose Luis Castillo Madrigal, who threatened debtors and collected debts. But in the district court she compared herself only to her husband, who, as a leader of the conspiracy, was an inappropriate comparator. *See United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007). Velazquez did not direct the district court to other coconspirators for comparison, and this fact-intensive inquiry is not the sort of assessment that we should undertake in the first instance. *See United States v. McGee*, 408 F.3d 966, 987 (7th Cir. 2005).

AFFIRMED.