NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 5, 2015
Decided August 21, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 14-2678

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 12 CR 789-2 |
| ISMAEL GARIBAY, *Defendant-Appellant.* | Gary S. Feinerman, *Judge.* |

**O R D E R**

Ismael Garibay made the mistake of becoming involved in a drug-distribution ring and was caught. His appeal concerns only the sentence he received after he pleaded guilty of violating 21 U.S.C. § 841(a)(1) by possessing with intent to distribute 7.38 kilograms of heroin. Garibay contended that he was entitled to a two-level reduction in his advisory offense level under U.S.S.G. § 3B1.2(b), because he played only a minor role in the offense. The district court did not see matters that way. It found instead that Garibay, a middleman, had provided the essential link in the chain between the suppliers and local distributors for an 18-month period. We conclude that the district

court did not clearly err in coming to that conclusion, and so we affirm Garibay's sentence.

**I**

Garibay pleaded guilty pursuant to a plea agreement, in which he admitted to coordinating two heroin transactions. On one occasion he obtained the drug from a supplier for two couriers; on the other occasion he arranged for heroin to be stashed in a hidden compartment of a car. Garibay also conceded in the agreement that he arranged three transactions for the sale of cocaine, involving a total of 6 kilograms. He contacted suppliers, he relayed information about price and quantity to buyers, and he used his place of business (a local bar) as the drop-off and pick-up point.

Before sentencing, the government interviewed Garibay to see if he might qualify for safety-valve treatment and thus escape any applicable statutory minimum sentence. See 18 U.S.C. § 3553(f); U.S.S.G. §§ 2D1.1(b)(17), 5C1.2. During that interview Garibay characterized himself as a "go-between" on behalf of a heroin supplier. He used his connections with suppliers, he explained, to set up deals with buyers who had contacted his co-defendant, Jesus Zambrano. This role, Garibay insisted, was practically mechanical: he did nothing but convey to each side what the other had said; he did not have any decisionmaking authority. For his efforts, he received up to $1,500 per transaction. Garibay also acknowledged that he had been present during some transactions, but he said that he was there for other reasons, such as picking up promotional material for his business. Finally, he admitted that about 18 months before his arrest, he began introducing cocaine suppliers to Zambrano and other distributors.

After the court accepted Garibay's guilty plea, a probation officer prepared a presentence investigation report in which she recommended denying a mitigating-role reduction in the offense level. As she saw it, Garibay's role was not minor, because he was the broker, he knew the amount of drugs being trafficked, and he was present at some of the deals. In contrast, she suggested, Miguel Lopez (a co-defendant who translated between Spanish and English on behalf of the conspirators) was the least culpable of the defendants. On the spectrum of culpability, Garibay fell somewhere in the middle, and thus was not substantially less culpable than the others.

Garibay objected to these conclusions, which were set forth in the Presentence Investigation Report (PSR). At the sentencing hearing, he maintained that he was less culpable than either Zambrano, the supplier, or the buyer, each of whom made

significant amounts of money, operated independent organizations, and decided such critical matters as amount and price. Garibay, in contrast, made at most a paltry $1,500 per transaction, "[sat] in the middle as a go-between," served only as a "glorified gopher" used for his connections, and never possessed the drugs. He argued that someone who does no more than to put one person in touch with another qualifies as a "minor participant" for purposes of U.S.S.G. § 3B1.2(b).

After finding that Garibay, as the broker, was not less culpable than the average member of the group, the district court denied the minor-role reduction. In explaining its decision, the court classified three members (two couriers and an accountant) as "average" participants on the ground that they were functionaries who did not make any decisions. "[U]pstream on the supply chain … at higher levels" were Zambrano, the supplier, and the distributor. The court then reasoned that even if Garibay was "merely a broker" and thus not as culpable as the supplier and distributor, his role connecting those higher-level conspirators rendered him "absolutely certainly" on a par with the average participants. The court rejected Garibay's assertion that he never possessed drugs, because Garibay had stipulated in his plea agreement that cocaine was dropped off at least twice at his bar. And although Garibay's knowledge about the conspiracy was "not perfect," he knew that kilogram quantities of illegal drugs were being transported and "took an active role" by attending meetings and transactions.

The court calculated an advisory guidelines range of 87 to 108 months for Garibay, after deducting 5 levels for acceptance of responsibility and safety-valve treatment, see U.S.S.G. §§ 3E1.1, 2D1.1(b)(17), and 5C1.2, and taking into account the then-pending amendment that was to reduce by two levels the offense levels in the drug quantity table found in U.S.S.G. § 2D1.1(c) (2014). It chose a sentence of 72 months, below the advisory range. Had it given Garibay the minor-role reduction, the advisory range would have been 51 to 63 months.

## II

On appeal, Garibay focuses only on the court's refusal to give him the minor-role reduction. He takes issue with the weight the court chose to give to certain facts. In particular, he says it erred by overstating the significance of his presence at a handful of transactions, by ignoring his lack of control over the drugs, and by failing to recognize his relative lack of knowledge about who else was involved.

Perhaps another district court would have weighed the evidence differently, but that does not mean that this judge erred. The standard of review on appeal is for clear error. See *United States v. Leiskunas*, 656 F. 3d 732, 739 (7th Cir. 2011). Here, ample evidence supports the district court's conclusion, and so we do not see error at all, much less clear error. According to the safety-valve proffer, Garibay knew roughly the quantity being sold and the price per kilogram. He knew most of the other participants, even if not all. And the court reasonably rejected his argument that he was less culpable because he supposedly "was not regularly exercising control" over the drugs; this was inconsistent with the fact that he did exercise control whenever drugs and money were left at his bar.

Garibay also maintains that the court should have accepted his characterization of himself as a middleman. This, he asserts, is the *only* reasonable conclusion, given how meager his compensation was and how limited his role as a message-transmitter. The problem is that Garibay did more than relay messages. As the court noted, he attended transactions, he arranged a delivery, and he used his bar as an exchange point. In addition, the court properly relied on Garibay's close relationship with higher-level members of the group as an additional reason to deny the reduction. See *United States v. Mendoza*, 457 F.3d 726, 730 (7th Cir. 2006). The fact that Garibay did not earn more does not automatically make him a "minor" participant. *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008).

Taking a different approach, Garibay also asserts that the district court should have accepted at face value his statement in his safety-valve proffer that he served only as a middleman. There is some support for Garibay's position that statements accepted as true in these proffers are credible. See *United States v. Rodriguez*, 342 F.3d 296, 301 (3d Cir. 2003); *United States v. Rodriguez De Varon*, 136 F.3d 740, 744 (11th Cir. 1998), *vacated on other grounds*, 175 F.3d 930 (11th Cir. 1999) (en banc). But the question here is not whether to believe what Garibay said; it is how to characterize his proffer statements for legal purposes. The court is not bound to accept legal characterizations. See generally *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010) (for purposes of FED. R. CIV. P. 12(b)(6) the court accepts factual allegations as true but not legal conclusions). In this case, the court acted within its discretion when it found that Garibay qualified for the safety valve, even though the court did not attach as much significance as Garibay would have liked to his representation that he acted only as a middleman.

Finally, Garibay argues for the first time in his reply brief that the district court impermissibly relied on some uncorroborated hearsay that was included in the PSR. He

does not specify which factual findings he means, but he has bigger problems with this point. He has waived it by waiting until the reply brief to raise it. See *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011). In addition, he did not produce any evidence challenging the PSR's accuracy or reliability, and so the district court was entitled to rely on the facts found in the report. See *United States v. Turner*, 604 F.3d 381, 385 (7th Cir. 2010); *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007).

We therefore AFFIRM Garibay's sentence.