In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3647

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CRUZ SAENZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 07 CR 00125—**Sarah Evans Barker**, *Judge.*

ARGUED APRIL 9, 2010—DECIDED OCTOBER 13, 2010

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Cruz Saenz received a whopping 293-month sentence for transporting drug money on one single occasion. The district court seemed to think that Saenz was involved in the conspiracy beyond this single incident and denied Saenz's request for a minor participant reduction as a result. Finding no evidence in the record of any involvement beyond the single transport of money, we remand for the district court to reconsider whether Saenz should

receive the minor role adjustment. Saenz also argues that the twenty-month delay between his indictment and trial violated his constitutional right to a speedy trial. Because nearly all of the delay is attributable to continuance requests by Saenz or his co-defendants, we reject the speedy trial challenge. Finally, we find no error in the district court's imposition of an obstruction of justice enhancement, as it was justified in concluding that Saenz willfully lied at trial about whether he knew the money he was transporting was drug money.

## I. BACKGROUND

This case involved a large-scale cocaine distribution network based out of Juarez, Mexico. Emigdio Martinez, "Alex," Jesus Manuel Fierro-Mendez, and another person indicted as John Doe lived in Juarez, where they obtained cocaine and arranged cocaine shipments out of Mexico to locations in the United States including Indianapolis. Co-conspirators in El Paso, Texas, arranged for truck drivers to make cocaine deliveries to Indianapolis. Manuel Mascorro was the primary Indianapolis connection to the conspiracy. Mascorro and his associates offloaded the cocaine in Indianapolis and prepared it for resale. Mascorro then distributed the cocaine to suppliers in Indianapolis and Ohio, and he delivered some of the cocaine proceeds to truck drivers to pay his cocaine sources in Mexico and Texas. This process was repeated many times.

Cruz Saenz, now forty-four years old, was a long-haul truck driver who made about $43,000 per year. His

brief involvement in the network began on August 29, 2007, when Mascorro asked "Alex" for a truck driver to deliver money because Mascorro owed him $500,000 for drugs that had been fronted. The next day, Saenz called Mascorro at Alex's request, and Saenz and Mascorro arranged a time to meet. Saenz met Mascorro and picked up a duffel bag containing money, and then he began the drive toward El Paso. Mascorro did not tell Saenz how much money the bag contained. Mascorro also did not tell Saenz that he was now cooperating with law enforcement, and officers soon arrested Saenz.

On September 26, 2007, Saenz and eighteen other co-defendants were indicted for conspiracy to distribute cocaine. Saenz's trial began twenty months later. A jury convicted him of conspiring to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. § 846. The district court sentenced Saenz to 293 months' imprisonment, the high end of the advisory guidelines range, and he appeals.

## II. ANALYSIS

### A. Speedy Trial Challenge

Saenz was indicted on September 26, 2007. His trial began on May 11, 2009, about twenty months after he was indicted, and he maintains that this delay infringed on his Sixth Amendment right to a speedy trial. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ."). Although Saenz raised his constitutional

speedy trial argument in his opening brief, he did not argue a violation of the Speedy Trial Act until his reply brief. It was too late to raise the statutory challenge then. *United States v. Stevens*, 380 F.3d 1021, 1025 (7th Cir. 2004); *United States v. Elizalde-Adame*, 262 F.3d 637, 640 (7th Cir. 2001). We therefore consider only his constitutional speedy trial argument, although we note that it is unlikely that a statutory claim would fare any better.

Following the Supreme Court's guidance in *Barker v. Wingo*, 407 U.S. 514 (1972), we evaluate constitutional speedy trial claims by assessing several factors: (1) whether the delay was uncommonly long; (2) whether the government or the defendant is more to blame for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice as a result. *Barker*, 407 U.S. at 530; *see United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007).

"The first factor, the length of delay, acts as a triggering mechanism; unless a presumptively prejudicial amount of time elapsed in the district court, it is unnecessary to conduct a searching analysis of all the factors." *Oriedo*, 498 F.3d at 597. We have found that delays of one year are presumptively prejudicial. *See id.*; *United States v. White*, 443 F.3d 582, 589 (7th Cir. 2006). In this case, twenty months passed between the original indictment and the beginning of the trial. This length of time is therefore sufficient to trigger our review of the other *Barker* factors. Before turning to the other considerations, we point out that this was a large-scale, complex conspiracy

case with nineteen co-defendants. That is relevant be-
cause the length of delay that can be tolerated for such
a case is longer than it is for prosecutions of simple
street crimes. *See Barker*, 407 U.S. at 530; *United States
v. Koller*, 956 F.2d 1408, 1413 (7th Cir. 1992).

The second factor, the reason for the delay, weighs in
the government's favor. The government moved for the
first continuance in the case, from November 8, 2007
through January 28, 2008. The reason it did so, though, is
that Saenz's first appearance in the United States
District Court for the Southern District of Indiana was
less than thirty days before the scheduled trial date,
and Saenz had not waived his statutory right to a trial
more than thirty days after his initial appearance. The
government filed another motion to continue in Decem-
ber 2008 for similar reasons after a co-defendant was
apprehended.

The bulk of the continuance requests, however, came
from defense counsel. Saenz's counsel twice filed his
own motions to continue. He filed the first motion on
September 12, 2008, asserting that plea negotiations
had been complicated and additional time was needed to
finalize the terms of a plea agreement. The court granted
the request and rescheduled the trial for December 15,
2008. Saenz's counsel filed another request for a continu-
ance on January 15, 2009, stating that he had another trial
that conflicted with this case's scheduled trial date. The
court granted the motion and rescheduled the trial for
May 11. In addition, Saenz twice joined motions to con-
tinue filed by a co-defendant on behalf of Saenz and the

other defendants. And on three other occasions, a co-defendant filed a request for a continuance, and neither Saenz nor any other defendant objected. The continuance requests made solely by his co-defendants are at best neutral in our analysis and are not the fault of the government. *See Oriedo*, 498 F.3d at 599.

The third factor is whether the defendant asserted his right to a speedy trial. The failure to assert the right makes it hard for a defendant to establish that he was denied a speedy trial. *Barker*, 407 U.S. at 532. Saenz's counsel never filed any papers complaining about the lack of a speedy trial. On his own, Saenz sent a motion to the district court on October 24, 2008 requesting trial "within 70 days pursuant to Amendment VI." The court entered the motion in the record but stated it would not act upon a pro se motion filed by a defendant with legal representation. Saenz also wrote a letter to the court on March 13, 2009 complaining about the continuances in his trial and the lack of contact with his attorney.

The final *Barker* factor assesses the prejudice to the defendant. The Supreme Court has instructed that prejudice should be assessed in light of interests the speedy trial right was designed to protect, namely: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and the concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Saenz spent the time before trial in custody. We have stated that "[s]ignificant pretrial incarceration may support a presumption of prejudice, but this

prejudice 'unenhanced by tangible impairment of the defense function and unsupported by a better showing on the other factors than was made here, does not alone make out a deprivation of the right to [a] speedy trial.'" *White*, 443 F.3d at 591 (quotations omitted). There is no claim that any of Saenz's witnesses became unavailable because of the delay, or that any witnesses' memories had faded or that his defense was otherwise tangibly impaired.

Taking these factors together, we conclude that Saenz's Sixth Amendment right to a speedy trial has not been violated. The length of the delay was not extreme for a complex multi-defendant conspiracy case. Although we recognize that Saenz attempted to assert his right to a speedy trial, that does not outweigh the significant fact that Saenz and his co-defendants were responsible for nearly all of the delay in this case. Moreover, Saenz did not suffer any tangible impairment of his defense. The balance of the *Barker* factors leads us to reject his speedy trial argument.

### B.  Obstruction of Justice Enhancement

Saenz also takes issue with the enhancement he received for obstruction of justice. U.S.S.G. § 3C1.1 provides for a two-level enhancement when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." The district court imposed the enhancement after concluding that Saenz

willfully lied at trial about his knowledge of the source of the money he was transporting.

The obstruction of justice enhancement "is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1 cmt. n.2. Therefore, when considering whether to apply § 3C1.1, "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." *Id.* Moreover, a defendant's testimony may be truthful, but the jury might still find it insufficient to excuse criminal liability. *United States v. Dunnigan,* 507 U.S. 87, 95 (1993).

The district court was cognizant of these parameters in this case, and it did not impose the enhancement simply because the jury found Saenz guilty. Rather, it made clear findings that Saenz had willfully lied at trial about an important point. *See United States v. Johnson*, 612 F.3d 889, 893 (7th Cir. 2010). Special Agent Raymond Rojas of the Federal Bureau of Investigation testified that he interviewed Saenz in El Paso on October 16, 2007, after his arrest. At that time, Saenz told Agent Rojas that he had met a "Camilo" in a bar in Juarez, Mexico, about one week before his trip to Indianapolis, and that Camilo had asked him to pick up money from someone in Indianapolis. Agent Rojas asked Saenz what he meant by "money," and Saenz replied, "well, you know . . . you know." When Agent Rojas asked for further clarification, Saenz replied, "It was drug money, dope money."

At trial, Saenz acknowledged that he told Agent Rojas that the money came from drug proceeds, but he testified that he did not know that fact until after his arrest. Saenz was explicitly asked at trial, "When you picked [the money] up, did you know it was drug proceeds?" To that question, he responded "no." The district court was justified in concluding that by responding this way, Saenz willfully lied at trial about his knowledge of the money's nature. We find no error in its decision to impose the obstruction of justice enhancement.

### C. Minor Participant Reduction

Saenz received a 293-month sentence for transporting drug money on one single occasion. Twenty-four-and-a-half years was evidently not enough for the government, as it asked the district judge to impose an even higher sentence. In light of his limited involvement in the large-scale conspiracy, Saenz maintains that the district court erred when it determined that he did not qualify for a minor participant reduction under U.S.S.G. § 3B1.2. The United States Probation Office recommended in its Presentence Investigation Report that Saenz receive the reduction, which would have resulted in an advisory guideline range of 135 to 168 months' imprisonment had he not had a prior felony drug offense subjecting him to a statutory mandatory minimum of 240 months. *See* 21 U.S.C. § 841(b)(1)(A). The government, however, opposed the reduction, and the district court concluded Saenz was not a minor participant. His resulting guideline range was 235 (made 240 by virtue of the statu-

tory minimum) to 293 months.[1] He appeals the denial of the minor participant reduction.

The United States Sentencing Guidelines provide for decreases in offense level based upon the role a defendant plays in the offense. Section 3B1.2 contains "a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). The guideline states:

> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2. A defendant must prove his entitlement to a role reduction by a preponderance of the evidence, and we review for clear error the district court's finding of fact regarding a defendant's level of participation in

---

[1] The significant difference between the advisory guideline ranges occurs because the impact of the minor participant determination on the offense level in this case was twofold. A minor participant receives a two-level reduction under § 3B1.2. In addition, the base offense level decreases by three levels for a defendant who receives a § 3B1.2 mitigating role adjust-ment where the base offense level by virtue of the drug quantity would have been 34, as it was here. *See* U.S.S.G. § 2D1.1(a)(3)(B)(ii) (2008).

an offense. *United States v. Gonzalez*, 534 F.3d 613, 615 (7th Cir. 2008).

Saenz does not argue that he should have received the four-level "minimal" participant reduction, which "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n.4. Instead, Saenz argues only that he should have received the two-level "minor" participant reduction. A "minor" participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* cmt. n.5. The minor participant determination requires the court to "weigh[ ] the totality of the circumstances" and is "heavily dependent on the facts of the particular case." *Id.* cmt. n.3(C); *see United States v. Hill*, 563 F.3d 572, 577 (7th Cir. 2009).

When it explained why it was denying Saenz the minor role adjustment, the district court twice stated that it was clear that Saenz was far more than a courier. It also said that Saenz was a "major participant" in the conspiracy and that "[t]he evidence established a much wider participation by Mr. Saenz in this ongoing conspiracy." But there is no evidence in the record that Saenz was involved in this conspiracy on more than one solitary occasion, or that his involvement was anything other than merely transporting money. Mascorro, who coordinated the organization's distribution out of Indianapolis, testified for the government at trial, and he said he had never met or talked to Saenz before the time in question. And that Saenz was entrusted with

$500,000 in cash, certainly no small amount of money, does not mean that he had any involvement in the conspiracy beyond transporting money.

In short, the only evidence in the record regarding Saenz's involvement in this conspiracy is that he worked as a long-haul truck driver and that he transported money for the conspiracy on a single occasion. Not disagreeing that Saenz only engaged in one transaction, the government emphasizes our decision in *United States v. Mendoza*, 457 F.3d 726 (7th Cir. 2006), where we recognized that couriers can play integral roles in drug conspiracies. True, but all drug couriers are not alike. Some are sophisticated professionals who exercise significant discretion, others are paid a small amount of money to do a discrete task. *Mendoza* itself highlights the point that all couriers are not the same, and it does not stand for the proposition that drug couriers cannot receive minor participant reductions. In *Mendoza*, we upheld the denial of a minor participant reduction where the district court reasoned that defendant Mendoza's close relationship with the drug conspiracy mastermind, and the fact that he was entrusted with delivering drugs directly to the mastermind, supported the judge's conclusion that Mendoza was not a minor participant. *Id.* at 728-30. But in contrast to Mendoza, whom the district judge noted had more than a passing relationship with the mastermind, the district judge granted a minor participant reduction to a co-defendant who was driving the cocaine in a semi-tractor trailer when arrested. *Id.* at 728. That co-defendant was a

mere "intermediary courier," and the district court awarded him a role reduction. *Id.*

As the guideline's commentary notes, the minor participant determination is heavily fact-dependent. *See* U.S.S.G. § 3B1.2 cmt. n.3(C). A drug courier should neither automatically receive nor automatically be precluded from receiving a role reduction. *See Hill*, 563 F.3d at 577. Instead, the controlling standard is whether the defendant is substantially less culpable than the average participant in the offense. *See* U.S.S.G. § 3B1.2. When assessing whether a defendant is substantially less culpable such that he should receive a role reduction, a defendant's "role should be compared to that of the average member of the conspiracy, not with the leaders." *United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007); *see also United States v. McGee*, 408 F.3d 966, 987 (7th Cir. 2005).

The question here is whether this one-time courier is less blameworthy than the average defendants in this conspiracy. Saenz was certainly less culpable than the co-defendants in Juarez who coordinated the cocaine and shipments from Mexico. And he was less culpable than Mascorro, who coordinated the operations in Indianapolis. Although he did carry a significant amount of money, unlike many of the others in the conspiracy, Saenz never touched any drugs or participated in any negotiations about the price or quantity of the drugs. Nor did he have an ownership interest in any of the conspiracy's cocaine. Perhaps he could have chosen the route he wished to take as he left Indianapolis, but he

had no decision-making authority beyond that. The district court did not make this assessment, though, as its premise was that Saenz was more than a courier, a statement for which we find no record support.

It may be that when the district court said that Saenz was more than a courier, it meant he was not simply a totally unknowing mule. One can infer from the wire-tapped conversations that Saenz knew "Alex" previously, and, as we said, the district court was not wrong to conclude that Saenz knew he was transporting drug money. The fact remains, however, that the only evidence in the record regarding Saenz's participation in this conspiracy is that he did so on only one occasion. The district court's reasoning suggests that it concluded otherwise, and that this conclusion was the premise for its denial of the minor participant adjustment. (We note that the district court did not reject the minor role reduction because Saenz was only sentenced for the drug quantity corresponding to the delivery he made, and this was proper. *See Hill*, 563 F.3d at 578 (discussing 2001 amendment to § 3B1.2 providing that a defendant held accountable only for the conduct in which the defendant was personally involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under the guideline)). Because the denial was apparently premised on information not supported by the record, we remand for reconsideration. *See id.* at 572 (remanding for reconsideration of district court's denial of role reduction adjustment where we could not "be confident that its analysis was guided by the appropriate factors").

In doing so, we note again the length of the sentence Saenz received for transporting drug money on one occasion. That sentence, again, was 293 months in prison. And, to repeat, the government sought a higher sentence. If the government's position is that 293 months is barely good enough for a one-time courier, we wonder what it thinks the appropriate sentence would be for someone who is a large-scale supplier of drugs. And with sentences like this one for single-time couriers, why not be a major supplier? If caught, the sentence is not likely to be much more, and one can certainly make a whole lot more money in the meantime.

In arguing in its pre-sentence memorandum and at the sentencing hearing for an even longer sentence, the government maintained that the advisory guideline range of 240 to 293 months did not adequately reflect Saenz's criminal history. The government's principal justification for contending that Saenz's criminal history was underrepresented was its assertion that Saenz came close to qualifying as a career offender, and that had he been so classified, his guideline range would have been 360 months to life. The district court apparently agreed with at least some of that premise, as its statement of reasons for the 293-month sentence states that "The defendant's criminal history warrants a sentence at the high end of the guideline range to ensure adequate deterrence."

We are not convinced by the government's position that Saenz's criminal history is underrepresented. The "felony drug offense" that subjected Saenz to a statutory

minimum of 20 years' imprisonment, *see* 21 U.S.C. § 841(b)(1)(A), was a 1990 Texas state court conviction for "illegal investment" for which he received only a suspended sentence and did not serve any jail time. (The indictment in the Texas case charged Saenz with knowingly financing and investing funds that he knew were intended to further the possession of over fifty pounds of marijuana.) Saenz received one criminal history point for a 1999 felony theft conviction in which Saenz acquired jeans without permission from the owner (his sentence was suspended there as well), and one point for a 2000 illegal dumping misdemeanor for which he was ordered to pay a fine. He received another point for a 2000 conviction for injury to a child with intent to cause bodily injury, which he received for striking a minor with a belt. He did not serve any jail time for that conviction. He also had a conviction at the age of nineteen for aiding and abetting unauthorized entry into the United States where he served thirty-two days in jail, and one at the age of twenty-four for possessing counterfeit money for which he received an eight-month sentence.

The government argued to the district court that Saenz was a career criminal who would have qualified as a career offender if his "illegal investment" conviction had been more recent, and that career offender status would have carried an advisory guideline range of 360 months to life. The argument that Saenz's criminal history warrants a sentence of at least 360 months' imprisonment strikes us as excessive. Although he is no saint, it is quite the leap to argue that a defendant with this record should be imprisoned for at least thirty years for a single transport of drug money.

Saenz's sentence is all the more staggering when compared to those received by others in the conspiracy. Jesus Manuel Fierro-Mendez, the only Juarez principal sentenced so far, received 324 months' imprisonment. And as one of the top leaders, it is proper that he receive more time in prison than Saenz. But no one else sentenced as of the time of oral argument had received a sentence longer than Saenz did. Jose Meraz and Roberto Espinoza, for example, who transported cocaine and drug proceeds between El Paso and Indianapolis, received sentences of 70 and 78 months, respectively. Pedro Mendoza, who helped Mascorro offload cocaine shipments, weighed and packaged the cocaine, and counted drug proceeds, received 97 months. Carrera Camilo, whose conduct was comparable to Mendoza's, received 46 months. And Mascorro, who coordinated the operation from Indianapolis, received 144 months' imprisonment, although it is true that he cooperated and testified at Saenz's trial.

Saenz's counsel represents that Saenz is the only defendant who did not receive a reduction pursuant to U.S.S.G. § 5K1.1. A defendant can receive such a reduction only after the government makes a motion asserting that the defendant has provided "substantial assistance" in the investigation and prosecution of another person who has committed an offense. Inexperienced couriers who perform a small role in the conspiracy often lack the information necessary to provide "substantial assistance" to the government, however, which precludes them from receiving a reduction under § 5K1.1 while the more culpable persons can

provide the information and benefit from the reduction. *See* Timothy P. Tobin, *Drug Couriers: A Call for Action by the U.S. Sentencing Commission*, 7 Geo. Mason L. Rev. 1055, 1065 (1999). Granted, Saenz went to trial and did not plead guilty like the defendants who received the § 5K1.1 reduction. We do not know whether the § 5K1.1 reduction was offered to him before he made the decision to go to trial.

For the reasons stated, we remand this case to the district court. It should determine whether Saenz should receive a minor participant reduction in light of the fact that the record supports that his involvement in the conspiracy was only on a single occasion.

## III.  CONCLUSION

Saenz's conviction is AFFIRMED. His sentence is VACATED, and we REMAND for further proceedings consistent with this opinion.