NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 14, 2011
Decided March 30, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

Nos. 11-2382 & 11-2899

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | Nos. 10-40090-002 & 10-40090-003 |
| VICTOR RUBIO QUINTERO and ISMAEL RIOS QUINTERO, *Defendants-Appellants.* | James E. Shadid, *Judge.* |

**O R D E R**

Victor Rubio Quintero and Ismael Rios Quintero, who apparently are cousins, pleaded guilty to conspiring to possess and distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and both were sentenced to 108 months' imprisonment. In these consolidated appeals, both defendants argue that the district court erred by not applying a minor-role reduction to their offense levels. See U.S.S.G. § 3B1.2(b). Because neither one met his burden of showing that he qualified for the reduction, we affirm the judgments.

**I**

The defendants were arrested in Chicago after taking possession of a car in which $45,000 and almost 900 grams of methamphetamine were hidden in a secret compartment. Also arrested was Hector Ahumada, who drove the car laden with the drugs and the money from Arizona to Illinois. All three were charged together with one count of conspiracy; each pleaded guilty, but only Ahumada negotiated a plea agreement. Ahumada cooperated with the government and was rewarded with a below-range prison sentence of 64 months. He apparently furnished the details in the record about the conspiracy.

All three defendants lived in Arizona. According to Ahumada, in February 2010 a man in Phoenix known to him only by the name "Brother" gave him money to buy a car in his name for Brother's use. Ahumada bought the car and delivered it to Brother. In August 2010, Brother instructed him to retrieve the car from a store parking lot in Arizona and drive it to Chicago. By the time Ahumada picked it up, the drugs and money were already stashed inside. Ahumada's journey to Chicago, however, was interrupted in Henry County, Illinois, by a traffic stop, during which a dog alerted the police to the drugs. Caught red-handed, Ahumada agreed to cooperate and continued driving to Chicago under surveillance. Once in Chicago, he called his contact using the number sent to him earlier in a text message from Brother. A short time later the defendants, driving a truck registered in Arizona, met Ahumada and told him to park at a restaurant and ride with them to their motel. While Ahumada waited at the motel, the defendants returned to his car. As soon as they got into the car, they were arrested. Victor told the arresting officers that he had come to Chicago a week earlier looking for work; Ismael said that he was just out to get something to eat. According to the agent whose affidavit was submitted with the federal criminal complaint, the telephone number used by Brother to contact Ahumada also was stored in the cell phone Victor was carrying when he was arrested.

Both Victor and Ismael, on the advice of counsel, refused to discuss the crime with the probation officer. For both defendants, the probation officer calculated a guidelines imprisonment range of 108 to 135 months, guided by a total offense level of 31 and a criminal history category of I. The quantity of methamphetamine was enough to mandate a prison term of at least 10 years, 21 U.S.C. § 841(b)(1)(A)(viii), but the probation officer concluded that both men were eligible for the "safety valve," which allowed them to escape the mandatory minimum, see 18 U.S.C. § 3553(f). The eligibility criteria for the safety valve include a requirement that the defendant truthfully provide the government "all information and evidence the defendant has about the offense." *Id*. § 3553(f)(5). The probation officer did not articulate the basis for her conclusion that the safety-valve criteria had been met, but if the defendants did discuss the conspiracy with the government, the information they shared with investigators apparently was not passed along to the probation officer or the district court. In any event, Victor's lawyer filed a sentencing memorandum arguing that he deserved a decrease of two offense levels for his purported

minor role in the conspiracy, see U.S.S.G. § 3B1.2(b), and further asserting that this reduction would lead to a further three-level decrease under U.S.S.G. § 2D1.1(a)(5)(ii). Counsel asserted that Victor "was essentially a 'mule' . . . involved in but one load of drugs." Victor did not testify at the sentencing hearing, however, and his lawyer submitted no evidence to back up his representations about the defendant's role in the conspiracy. Ismael's lawyer submitted a commentary on the sentencing factors in which he argued that the defendant was entitled to a minor-role reduction because he was only an "intermediary courier" who, as far as the evidence showed, was not "involved in the conspiracy on more than one solitary occasion." According to counsel, Ismael had been "paid a relatively small amount of money to complete a discrete task" and had "never touched any drugs or participated in any negotiations about the price or quantity of the drugs." But like Victor's lawyer, counsel for Ismael offered no evidence to back up these representations.

The district court concluded that neither defendant deserved a reduction for being a minor participant in the conspiracy. At Victor's sentencing, the court adopted the probation officer's view that "there was no leader or subordinates" in the charged conspiracy. The judge pointed out that the two cousins had traveled from Arizona to Chicago to prepare for Ahumada's delivery, a fact that the court did not think "fits neatly enough into the minor role participant that he should be awarded the minor role reduction." Later when sentencing Ismael the court said that neither man could be described as having a minor role because Ismael, Victor, and Ahumada "all had equal parts" and all played an essential role in the enterprise. For both Victor and Ismael the court adopted the probation officer's guidelines calculations and imposed a prison term of 108 months, the bottom of the guidelines range.

## II

Victor and Ismael each contends that the district court erred in rejecting his request for a minor-role adjustment. While Brother and the intended recipient in Chicago may have played a central role in the conspiracy, the defendants depict themselves as "unsophisticated, intermediary couriers, engaged in a single transaction," who did not even know "the quantity or type of drugs they were to pick up" or that there was money in the vehicle. They urge that it was Ahumada who purchased the vehicle and then transported the drugs across the country, while, in contrast, Victor's and Ismael's "only task" was to transport the drugs they picked up from Ahumada to a third location. Because this "role was minor in comparison to that of their associates," they conclude, they each qualified for a reduction under § 3B1.2(b).

The defendants concede that they had the burden of showing by a preponderance of evidence that the reduction was warranted, see *United States v. Panaigua-Verdugo*, 537 F.3d

722, 724 (7th Cir. 2008); *United States v. Gonzalez*, 534 F.3d 613, 617 (7th Cir. 2008), and they also acknowledge that review here is for clear error only, see *United States v. Haynes*, 582 F.3d 686, 708–09 (7th Cir. 2009); *United States v. Watts*, 535 F.3d 650, 659 (7th Cir. 2008). They are right to acknowledge this much. This court will not overturn the application of § 3B1.2 unless its review of the evidence leaves it "'with a definite and firm conviction that a mistake has been committed.'" *Haynes*, 582 F.3d at 709 (quoting *Panaigua-Verdugo*, 537 F.3d at 724).

Section 3B1.2(b) authorizes the two-level reduction "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). The commentary clarifies that the reduction is for a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* at cmt. n.5. "[T]he controlling standard is whether the defendant is substantially less culpable than the average participant in the offense." *United States v. Saenz*, 623 F.3d 461, 468 (7th Cir. 2010). We have emphasized that the defendant should be compared to the average participants, rather than the leaders of the criminal enterprise. *Id.*; *United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007).

Drug couriers are neither automatically entitled to nor precluded from receiving a minor-role reduction under § 3B1.2. *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011); *Saenz*, 623 F.3d at 468; *Panaigua-Verdugo*, 537 F.3d at 725; *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 960 (7th Cir. 2004). The inquiry is fact-bound, *Saenz*, 623 F.3d at 468; *United States v. Garcia-Ortiz*, 657 F.3d 25, 29 (1st Cir. 2011), and, as we have observed, the label "courier" can be given to "sophisticated professionals who exercise significant discretion" or to persons "paid a small amount of money to do a discrete task," *Saenz*, 623 F.3d at 467. Factors that a sentencing court should consider include the courier's relationship with the leaders, *United States v. Mendoza*, 457 F.3d 726, 730 (7th Cir. 2006), as well as the other tasks undertaken by that courier, see *Gonzalez*, 534 F.3d at 617 (concluding that courier was not entitled to reduction because he "was trusted to carry a large quantity of cash, pick up a large quantity of drugs from a dealer by himself, transport the drugs in his own car and store them in his own home").

In this case the defendants made no effort to marshal evidence that might have supported (indeed, compelled) a finding that they were minor participants. Their appellate brief is replete with assertions that the limited evidence of record does not show them to be *more than* minor participants. But that reasoning gets the burden of proof backward. Essentially the defendants argue that the government did not know enough about them to disprove their lawyers' assertions that both of them were one-time couriers with a discrete role, no financial stake beyond getting paid to get the drugs from Ahumada's car to the buyer, and no decision-making authority. Conspicuously missing is any evidence from the record showing that their role was so limited. The defendants neither talked with the

probation officers nor testified at sentencing. And whatever the defendants told the government in their safety-valve debriefings apparently was never shared with the probation officer or the district court; certainly the content of the debriefing is not part of the record on appeal. So there is nothing in the record beyond what the arresting officers and Ahumada contributed. The representations made by the defendants' lawyers are not evidence and count for nothing; a defendant cannot avail himself of a guidelines adjustment on which he bears the burden of proof by hiding behind unsworn assertions of fact fronted by his lawyer. See *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008); *United States v. Swanson*, 483 F.3d 509, 513 (7th Cir. 2007); *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002); *United States v. Mayberry,* 272 F.3d 945, 948–49 (7th Cir. 2001); *United States v. Purchess*, 107 F.3d 1261, 1267–68 (7th Cir. 1997); *United States v. Webb*, 616 F.3d 605, 610 (6th Cir. 2010); *United States v. Bueno*, 443 F.3d 1017, 1022 (8th Cir. 2006); *United States v. Onofre-Segarra*, 126 F.3d 1308, 1310 (11th Cir. 1997).

The correct focus, then, is not on the unsupported picture the defendants present, but on the concrete information about the charged conspiracy and the defendants' role in it, as compared with the only other participant who matters to the analysis. That participant is Ahumada, not Brother or the buyer or the hypothetical couriers. The question is whether the district court committed clear error in finding that these defendants did not show themselves to be less culpable than the *average* person in the conspiracy. See *Gonzalez*, 534 F.3d at 617. To the extent that the defendants argue that they are less culpable than the purported leaders of the conspiracy—Brother and the intended recipient of the drugs in Chicago—they fail to understand that the relevant analysis compares them with the *average* member of the criminal enterprise, not the leaders. *Saenz*, 623 F.3d at 468; *Gallardo*, 497 F.3d at 741.

The defendants also characterize themselves as less culpable than Ahumada because he purchased the car, and it was used to deliver drugs for Brother on more than one occasion." Yet here again there is nothing to back up that assertion. The defendants may be alluding to the probation officer's mention of another trip a few weeks earlier, when Ahumada drove the car to Albuquerque, left the vehicle in a parking lot, and retrieved it 90 minutes later. The probation officer did not say, however, that Ahumada took drugs either to or from Albuquerque. We can only speculate about the purpose of this trip, and an equally plausible explanation is that the secret compartment was installed in Albuquerque.

The defendants also make much of the fact that Ahumada was trusted to transport the drugs a longer distance, but "[t]he distance each member of a drug conspiracy transports the drugs is not *per se* indicative of his level of involvement in the conspiracy." *Mendoza*, 457 F.3d at 729. Indeed, the record suggests that the defendants may have had a closer relationship with the leadership because they not only were in contact with Brother

but also had been entrusted to meet the final recipient of the drugs in Chicago. See *id.* (reasoning that defendant courier had leader's "utmost trust and confidence" since he was entrusted with leader's identity, as well as "the final delivery of the drugs"). Ahumada, on the other hand, could not finger the intended recipient, and since he was given the riskiest task of transporting the drugs for all but the last few miles, another plausible inference is that the defendants were higher in the conspiratorial pyramid. It is not uncommon, in drug cases, to find that culpability and proximity to the drugs are inversely related. See *United States v. Dawson*, 425 F.3d 389, 396 (7th Cir. 2005); *United States v. Noble*, 246 F.3d 946, 954 (7th Cir. 2001); *United States v. Jones*, 145 F.3d 959, 969–70 (8th Cir. 1998); *United States v. Gutierrez*, 576 F.2d 269, 275 (10th Cir. 1978).

In the end, the defendants have not shown that the district court erred – much less clearly erred – in concluding that they did not qualify for a minor-role reduction. We therefore AFFIRM both of the district court's judgments.