In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-3130

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

VICTOR MANUEL DIAZ-RIOS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CR 697—**Charles R. Norgle**, *Judge.*

ARGUED DECEMBER 12, 2012—DECIDED JANUARY 30, 2013

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Victor Diaz-Rios pleaded guilty to trafficking in a considerable quantity of cocaine and received a substantial sentence. Too substantial, he believes. In this appeal, he argues only that he should have received a mitigating-role reduction under U.S.S.G. § 3B1.2, which would have entitled him to a lower advisory guideline range. Before the district court, both the government and Diaz-Rios supported a two-level

reduction in Diaz-Rios's offense level based on his minor role in the offense. The district judge, however, never discussed or even acknowledged any factor relevant to § 3B1.2 apart from the drug quantity. The government concedes that in this instance the court did not adequately explain its ruling. Our independent review of the record leads us to the same conclusion. We therefore vacate the sentence and remand.

# I

Diaz-Rios was caught picking up a very large load of cocaine—45 kilograms—and pleaded guilty to possession with intent to distribute seven months later. See 21 U.S.C. § 841(a)(1). Because of the drug amount he faced a statutory minimum prison term of 10 years. See 21 U.S.C. § 841(b)(1)(A)(ii). As part of a written plea agreement, the government stipulated to a downward adjustment for acceptance of responsibility and anticipated that Diaz-Rios would qualify for the "safety valve" provided by 18 U.S.C. § 3553(f) and U.S.S.G. §§ 5C1.2, 2D1.1(b)(16). The government also noted that further review of the case might "lead the government to conclude that different or additional guideline provisions apply in this case," and either party could correct errors in applying the guidelines before sentencing. The plea agreement did not mention the possibility of a reduction under § 3B1.2. After executing the agreement but before sentencing, Diaz-Rios gave what the government called a "fully honest" safety-valve proffer.

The proffer, as supplemented by the government's investigation, illuminates Diaz-Rios's role in the drug-trafficking conspiracy. According to both parties, Diaz-Rios, a 21-year-old Mexican national with no criminal history and a valid tourist visa, was staying with his in-laws in Chicago while on vacation until he was kicked out after an argument with his brother-in-law. Diaz-Rios spoke no English and now lacked access to his brother-in-law's cars. Providentially (he thought), a friend of his brother-in-law (known to Diaz-Rios only as "Alex") offered the use of a Jeep Liberty belonging to someone called "Payaso." Diaz-Rios gratefully accepted. Two weeks later Alex called Diaz-Rios and asked him to drop off money and pick up some "luggage" as a favor to Payaso for loaning his Jeep. Diaz-Rios suspected that "luggage" meant illegal drugs, but he agreed because he felt obliged to repay Payaso's favor.

Payaso contacted Diaz-Rios, instructed him to meet a woman who would give him the money he was to exchange for the luggage, and gave him a phone number for someone named "Mascaria" (later identified as Jose Luis Maciel), who would coordinate the luggage pick-up. Diaz-Rios called Maciel, who said that he was not yet in Chicago but would call Diaz-Rios when he was close. A few hours later, at Maciel's direction, Diaz-Rios drove the Jeep to a gas station about 65 miles from Chicago. Maciel was waiting by the tractor-trailer he had driven from California. At that point, Diaz-Rios loaded both a box containing 25 kilograms of cocaine and a duffel bag with another 20 kilograms into the Jeep. As he did so, Diaz-Rios unzipped the bag slightly; this allowed him to see that it contained packages wrapped

in brown paper. Only then could he have known (assuming that he inferred that drugs lay inside the brown paper) what was inside the containers. Before Diaz-Rios could give Maciel the $2,000 as payment for hauling the cocaine from California, Drug Enforcement Administration (DEA) agents swept in, arrested the pair, and seized the cocaine and money. They had been watching the gas station because Maciel was known to have delivered drugs there previously. There is no evidence that Diaz-Rios had ever been involved in drug trafficking in the past.

During the time while the presentence report was being prepared, Diaz-Rios declined to speak with the probation officer. Apparently he already had debriefed government agents about the others involved in the drug transaction, but that information was not passed on to the probation officer. The probation officer had tried to contact the DEA case agent to get the details from the debriefing, but the agent never responded. The probation officer was aware that others besides Diaz-Rios and Maciel had been involved, but at the time he drafted the presentence report he knew only about the gas-station rendezvous and the seizure of the drugs and money. The probation officer concluded without explanation that Diaz-Rios did not qualify for a mitigating role reduction. He speculated in his confidential sentencing recommendation, however, that Diaz-Rios might have entered the United States not to vacation but "for the sole purpose" of trafficking drugs.

Before sentencing Diaz-Rios objected to the absence of a reduction under U.S.S.G. § 3B1.2 recognizing his small

role in the offense; he proposed a 2-level reduction as a minor participant. See § 3B1.2(b). Through counsel, he asserted that the facts showed that he was involved in the crime only for a few hours on one occasion and that his role was limited to exchanging the cash given to him for the cocaine. It is unclear from the record whether the probation officer addressed this objection before sentencing.

At sentencing the prosecutor agreed that a reduction was warranted, noting his view that Diaz-Rios had been targeted for the role of courier because of his naiveté and his lack of knowledge of the amount or type of drugs involved. The prosecutor also revealed that federal agents had been investigating Maciel. They identified a number of Maciel's coconspirators through his phone conversations. Without Diaz-Rios's proffer, the government would not have known enough to arrest Alex or Payaso. The prosecutor explained that this information had been acquired later on; none of it had been included in the written "Government's Version of Events" given to the probation officer because that document had been drafted before Diaz-Rios's proffer. (The prosecutor did not explain why the written submission had not been supplemented or why the probation officer's efforts to obtain more details had been ignored.) The prosecutor acknowledged that the government typically took the position that being entrusted with a large amount of cocaine suggests that the defendant's role is more than minor, but he stated that the investigation in the present case had convinced the government that Diaz-Rios was an exception.

In finding that Diaz-Rios was not a minor participant, the district court offered this explanation:

> Well, as the government's version indicates, the following occurred:
>
> Lying on the back seat of the Jeep Liberty was the duffel ba[g], inside of which was the duct-taped package containing a kilogram of cocaine visible through the open zipper. And a search of the bag revealed approximately 20 kilograms of cocaine inside.
>
> Additionally, a cardboard box underneath the duffel bag contained an additional 25 kilograms of cocaine, amounting, therefore, to 45 kilograms of cocaine, which is a very substantial amount of cocaine.
>
> And there are many cases involving the unintelligent mules or those persons who consciously avoid knowledge.
>
> This case, however, is one in which any ordinary person, even unintelligent or naive or not the most brilliant of persons who knows he is about to deliver controlled substances, would look into the bag. He can't close his eyes or consciously avoid opening the zipper.
>
> This is a simple duffel bag. And at least, according to the government's version, which is based upon what the defendant told the government, there was a kilogram of cocaine visible through the open zipper.
>
> So under those circumstances the defendant knew what he was doing and was not the victim of manipu-

lation by more sophisticated entrepreneurs. And also, there was a cardboard box underneath the duffel bag which contained 25 kilograms of cocaine. And it doesn't take much to look into a cardboard box.

The amount of cocaine here, as I have said, is very significant. And I don't think there is enough to support some motion for minor role under these circumstances.

This case can be distinguished from the others [defense counsel] has mentioned. There are numerous cases going in the other direction.

Mules generally, to use that term, are not routinely give minor-role positions for sentencing purposes. But this is not an easy mule case.

Because of the amount, the presence of the drugs in the Jeep Liberty, which was clear, Diaz, before walking away, left both the driver's and passenger side rear seat door of the Jeep Liberty open, and it was clear to anyone standing at or near the vehicle that lying on the back seat of the Jeep Liberty was a duffel bag which contained the drugs.

Under these circumstances I don't think that Mr. Diaz-Rios should be given a minor-role determination by the Court . . . .

The court said nothing about Diaz-Rios's role relative to the other participants—a point that the prosecutor had discussed. It calculated an imprisonment range of 87 to 108 months, which included application of the safety valve but not a mitigating-role reduction. The court

sentenced Diaz-Rios to 87 months. Had the court found him to be a minor participant, he would have received not only a two-level reduction under § 3B1.2(b), but also an additional three-level reduction under U.S.S.G. § 2D1.1(a)(5). Those downward adjustments would have resulted in an imprisonment range of 51 to 63 months.

## II

On appeal Diaz-Rios contends, and the government concedes, that the reasons given by the district court for refusing a mitigating-role reduction do not demonstrate that the court evaluated all of the relevant factors under § 3B1.2. Both parties also suggest that the district court may have concluded incorrectly that a downward adjustment could not be awarded because Diaz-Rios was held accountable only for the amount of cocaine he personally possessed, and not for amounts possessed by other persons in the conspiracy.

A determination of the defendant's role in the offense is a factual finding reviewed for clear error, but questions about a district court's interpretation or application of § 3B1.2 are reviewed *de novo*. *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011). The issue here concerns interpretation or application, and so the latter standard applies.

We can quickly set to one side the argument that the district court erred by acting as if it was precluded from finding that Diaz-Rios was a minor participant because he was not held accountable for drug transac-

tions beyond his own. That contention has no support in the record. The judge apparently thought that the large amount of cocaine was a significant factor—possibly the most significant factor—in the evaluation of the mitigating-role adjustment; such a position finds support in a number of cases. See *United States v. Gonzalez*, 534 F.3d 613, 617 (7th Cir. 2008); *United States v. Bautistia*, 532 F.3d 667, 674 (7th Cir. 2008); *United States v. Gallardo*, 497 F.3d 727 (7th Cir. 2007); *United States v. Navarro*, 90 F.3d 1245, 1263 (7th Cir. 1996). Moreover, the judge never indicated that he was refusing the reduction on the assumption that Diaz-Rios had gotten a break and not been held accountable for an even larger drug quantity.

Diaz-Rios's other argument, however, is that the court did not fully consider all factors pertinent to the minor-role adjustment (or at least its explanation does not reveal that consideration). That point has merit. For example, we cannot tell whether the district court compared Diaz-Rios's role in the offense against those of average participants, as it should have. See U.S.S.G. § 3B1.2 cmt. n.3-5; *Leiskunas*, 656 F.3d at 739; *United States v. Saenz*, 623 F.3d 461, 468 (7th Cir. 2010); *United States v. Mendoza*, 457 F.3d 726, 729-30 (7th Cir. 2006). Diaz-Rios identified three other participants who, in his view, were substantially more culpable. The court should have looked at his role in the conspiracy as a whole, including the length of his involvement in it, his relationship with the other participants, his potential financial gain, and his knowledge of the conspiracy. See U.S.S.G. § 3B 1.2 cmt. n.3(C); *Saenz*, 623

F.3d at 467; *Mendoza*, 457 F.3d at 730; *United States v. Hunte,* 196 F.3d 687, 694 (7th Cir. 1999); *United States v. Stephenson*, 53 F.3d 836, 850 (7th Cir. 1995). We have no evidence that it did that. Naturally, the court was entitled to take into account the substantial drug quantity involved here, but it is unclear what effect the court gave the government's insistence that notwithstanding the substantial amount of cocaine entrusted to Diaz-Rios, his role in the offense was nonetheless minor. Where the reasons for a ruling under § 3B1.2 are ambiguous, we have no choice but to remand for a more complete explanation. See *United States v. Agee,* 83 F.3d 882, 889 (7th Cir. 1995); *United States v. Gutierrez*, 978 F.2d 1463, 1471 (7th Cir. 1992); *United States v. Scroggins*, 939 F.2d 416, 424 (7th Cir. 1991).

On remand the district court might still conclude that Diaz-Rios was not a minor participant, but we observe that there is significant evidence indicating that he was "substantially less culpable than the average participant." See U.S.S.G. § 3B1.2 cmt. n.3(A). If the information supplied by the parties is credited, then Diaz-Rios participated in drug trafficking on one occasion only, and his role was limited to exchanging money for an unknown quantity of drugs. See *Saenz*, 623 F.3d at 467-68 (remanding for reconsideration of § 3B1.2 adjustment where record indicated that drug courier committed offense on single occasion). Diaz-Rios was involved in the conspiracy for a matter of hours, had no financial stake in the operation, and did not even know the other participants. He also presented the sentencing judge with 48 letters of support consistently describing

him as an honest, hard-working young man, expressing surprise that he would have been involved in the offense, and opining that the principal offenders likely relied on his lack of education and youth to manipulate him into participating. The government echoed the same sentiment at sentencing.

The other known participants seem substantially more culpable. Alex cultivated a friendship with Diaz-Rios for the apparent purpose of later persuading him to pick up cocaine for Payaso. Payaso loaned Diaz-Rios the Jeep, gave him the drug money, and directed him to Maciel through a fourth, unnamed conspirator. Maciel had a long record of drug dealing. Thus, although the district court is free to draw whatever conclusion seems supported by the record, we comment only that it would be possible as a matter of law for it to find that Diaz-Rios was a minor player even though he was briefly entrusted with the custody of 45 kilograms of cocaine.

Diaz-Rios's sentence is VACATED and the case is REMANDED for further proceedings consistent with this opinion.